751 P.2d 685

**NEW MEXICO STATE BOARD OF EDU-CATION and Board of Education of Cuba Independent School District No. 20, Petitioners,**

v.

**Johnny ABEYTA, Respondent.**

**No. 16958.**

Supreme Court of New Mexico.

Feb. 26, 1988.

Simons, Cuddy & Friedman, Daniel H. Friedman, Hal Stratton, Atty. Gen., LeRoy R. Warren, Asst. Atty. Gen., Santa Fe, for petitioners.

Jeanne Michele Guttmann, Albuquerque, for respondent.

Jane C. Cohen, Santa Fe, for amicus curiae N.M. School Bds. Ass'n, Northern New Mexico Network for Rural Educ., New Mexico School Administrators Ass'n.

## OPINION

RANSOM, Justice.

The motion for rehearing was considered. The opinion filed January 8, 1988, is hereby withdrawn and the following substituted therefor.

This case is before us on writ of certiorari to review a court of appeals memorandum opinion disallowing the termination of a tenured school teacher's employment. The court of appeals has required a teaching staff realignment to provide employment for respondent Johnny Abeyta. Petitioners, New Mexico State Board of Education (State Board) and Board of Education of Cuba Independent School District No. 20 (Local Board), assert that, under the appropriate standard for review of the decision of the State Board, a requirement of staff realignment conflicts with New Mexico law. We agree and reverse the court of appeals. We affirm and reinstate the decision of the State Board which, after a *de novo* hearing, upheld the Local Board's termination of teacher Abeyta's employment in accordance with its policy on reduction in force (RIF), and pursuant to the law in effect at the time, i.e., NMSA 1978, Section 22-10-15 (Repl.Pamp.1984) (repealed 1986).

The State Board controls the public schools as provided by law. N.M. Const. art. XII, § 6(A). The State Board has authority to promulgate, publish and enforce regulations in exercise of its control,

management and direction of all public schools. NMSA 1978, Section 22–2–1 (Repl.Pamp.1986 & Cum.Supp.1987). State Board regulation 80–1 empowers school districts to terminate tenured teachers in RIF situations and grants each discretion to adopt termination policies tailored to local conditions. Here, the Local Board's RIF policy established that certified teachers had preference over those with substandard certification and that tenured teachers had preference over non-tenured teachers. The policy further permitted a teacher terminated under RIF to compete against other teachers for positions for which both were certified. A performance component was established for rating and ranking teachers in competition. The policy accorded a maximum weight of 75% to performance, 10% to education and 15% to service criteria. The policy specified that realignment of other staff to create a position for a terminated teacher was not required. After its *de novo* hearing, the State Board concluded that the Local Board's RIF policy complied with the State Board's regulation and that its selection criteria were reasonable and within the sound discretion of the Local Board.

Abeyta was employed by the Local Board as a tenured teacher, certified in social studies and art. In 1983, Abeyta was teaching in a program that was federally funded, outside the social studies program. When federal funds were cut for the 1984–85 school year, Abeyta's teaching position was eliminated and the Local Board was left with three certified social studies teachers for two positions. Thus, in the spring of 1984, and pursuant to its RIF policy, the Local Board instituted a RIF plan in its social studies department effective the beginning of the 1984–85 school year. The causes listed in the RIF plan were (a) decrease in enrollment;[1] (b) a decrease in revenue; and (c) change in the educational program.

Of the three tenured social studies teachers (Abeyta, Sampson, and Delgado), Abey-

ta scored the lowest on the performance point scale, and was identified as the candidate for termination based on total points awarded for performance, education and service. At this point, Abeyta competed unsuccessfully against another tenured, certified art teacher. He failed to obtain bilingual certification in order to bump a non-tenured, certified bilingual teacher (May). *See* § 22–10–3 (teacher shall hold a valid standard, substandard or substitute certificate). Although also a social studies teacher, May, because of her certification in bilingual education, was not placed in the RIF pool with the others. At the local board hearing on May 22, 1984, Abeyta was dismissed from his teaching position pursuant to the RIF plan.

Abeyta timely filed his notice of appeal and a *de novo* hearing was held before the State Board on July 30 and September 10, 11, 13, 14 and 24, 1984. *See Board of Educ. of the City of Albuquerque v. New Mexico State Bd. of Educ.*, 88 N.M. 10, 13, 536 P.2d 274, 277 (Ct.App.1975) (*de novo* provisions of new law allow State Board to proceed with the action as if it had been originally commenced at the level of the State Board); *see also Board of Educ. of Melrose Mun. Schools v. New Mexico State Bd. of Educ.*, 106 N.M. 129, 740 P.2d 123 (Ct.App.1987). At the *de novo* hearing the Local Board had the burden of showing that there was not available a position which the tenured teacher was qualified to teach. *Swisher v. Darden*, 59 N.M. 511, 287 P.2d 73 (1955).

In affirming the decision of the Local Board, the State Board concluded, *inter alia*, that (1) it was lawful and reasonable for the RIF policy to specify that staff realignment not be required, and to require realignment in this case would have seriously affected the educational program in the social studies department and in the library; (2) although one of the social studies teachers (Sampson) possessed a librarian certificate, a non-tenured librarian (Car-

---

1. The State Board found that, while in the RIF plan the school district projected a substantial enrollment decrease in 1984–85, this decline had not materialized as of the hearing dates.

The Board concluded that decrease in enrollment was not in itself a reason to substantiate the termination of Abeyta.

son) possessed additional, highly desirous media skills [2]; and (3) it was lawful and reasonable to exclude the bilingual teacher (May) from the RIF pool due to her bilingual certification, since bilingual education is required by law and accommodates the cultural and linguistic background of the student body. The State Board further concluded that (4) to have discharged May and retained Abeyta would have seriously affected the educational program, and (5) the Local Board established by a preponderance of the evidence that good cause existed for its decision to discharge Abeyta.

In reversing the State Board on the realignment issue, the court of appeals, following *Penasco Indep. School Dist. No. 4 v. Lucero,* 86 N.M. 683, 526 P.2d 825 (Ct.App. 1974), determined that the Local Board failed to make the required affirmative showing that there was no position available for which Abeyta was qualified. The court held that "[r]ealignment of the Local board's teaching staff would have avoided the dismissal of any tenured teacher" and "there has been no evidence, substantial or otherwise, that a realignment would have had a deleterious effect on the quality of the academic program." The court apparently agreed with Abeyta's suggested realignment of the teaching staff whereby Sampson could have been placed in the library and Carson, who had additional certification in language arts, could have been placed in that department where two positions were open; then, Abeyta could have retained his social studies class. The court stated that by "realigning these teachers so that each was teaching a subject for which he was certified cannot be considered injurious to the education program. Any other conclusion would render the concept of certification a nullity."

The law at the time relevant to this case provided that, upon appeal, the court of appeals shall affirm the decision of the State Board unless the decision is found to be (1) arbitrary, capricious or unreasonable; (2) not supported by substantial evidence; or (3) otherwise not in accordance with law. *Board of Educ. of Alamogordo Pub. School Dist. No. 1 v. Jennings,* 98 N.M. 602, 607–08, 651 P.2d 1037, 1042–43 (Ct. App.1982) (applying NMSA 1978, § 22–10–22(J) (Repl.Pamp.1984) (repealed by Laws 1986, ch. 33, § 33)). (The present comparable provisions are §§ 22–10–14, –14.1.) In making its determination, the reviewing court will employ the whole record standard, *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.,* 101 N.M. 291, 681 P.2d 717 (1984), and the presumption of correctness which accompanies an administrative decision. *New Mexico Human Servs. Dep't v. Garcia,* 94 N.M. 175, 608 P.2d 151 (1980).

The record supports the State Board's conclusion that a realignment of the teaching staff would have seriously affected the educational program both in social studies and in the library. While the RIF policy permits staff realignment, testimony presented by the school superintendent suggests that a realignment was considered and rejected.

We had a situation in the library [where] we have finally acquired * * * the services of [Carson] an individual [who] is extremely energetic, has done an excellent job in our library over the two years that he has been there. That was one of the programs that was suffering drastically. We wanted to preserve * * * that program and the only way we felt we could * * * is by keeping that individual, in there. We considered the option that you're talking about which would have been to move John Sampson into that program.

* * * He was in that program four or five years ago at a middle school level [where] there is a lot of difference between programming library for middle

---

**2.** Although uncertified at the time the RIF plan was initiated, the evidence at the hearing before the Local Board had established the likelihood of Carson's certification before the beginning of the next school year. See *Penasco Indep. School Dist. No. 4 v. Lucero,* 86 N.M. 683, 526 P.2d 825 (Ct.App.1974), where certification status was properly based upon a reasonable expectation for the ensuing school year. Carson was indeed certified as a media specialist at the time of the *de novo* hearing before the State Board.

school * * * as opposed to high school. That consideration was given and we felt that we made a professional judgment that that would deteriorate the program * * *.

The other consideration was that John Sampson is in our social studies program at the high school. We consider him * * * an exceptionally good social studies person. He has no interest in going into library. We would have, in essence, ended up disturbing two extremely important programs if we took this approach. That is why we discounted that as an alternative.

Further testimony by the superintendent, when coupled with testimony by the assistant superintendent and Sampson, indicates that if Abeyta's proposed realignment had been implemented the best social studies teacher would have been moved to the library in order to leave a place for Abeyta, and the media specialist/librarian would have been replaced by one who had no desire to leave social studies teaching for the librarian position. The impact on the social studies program would have been harsh. According to the assistant superintendent,

It would literally mean that we would have to start from scratch again. Meaning that we would have to find an individual that would be able to look at the concept of bilingual education and how it relates to the integration of social studies and the English, and be able to, basically, begin to acquire those skills to deliver a bilingual program. It would mean, again, perhaps one or two years more of training before we would even start talking about services to kids. * * * Mr. Sampson is right now—you might say the pivotal point within the social studies department in the implementation of our high school bilingual program.

■ There is a strong public policy favoring retention of tenured teachers. However, the strong concurrent policy in favor of high quality education and a high standard of teaching performance must also be considered. *Jennings*, 98 N.M. at 606, 651 P.2d at 1041. In New Mexico, a tenured teacher subject to termination under a RIF plan is entitled to bump a non-tenured teacher holding a position for which both are certified, *Swisher v. Darden*, or take priority over a non-tenured teacher in obtaining the necessary certification for a vacant position for which neither is presently certified. *Penasco.* However, a tenured teacher can be terminated and a non-tenured teacher retained as an alternative to a staff realignment which would seriously affect the program. *See Fort Sumner Municipal School Bd. v. Parsons*, 82 N.M. 610, 485 P.2d 366 (Ct.App.), *cert. denied*, 82 N.M. 601, 485 P.2d 357 (1971).

■ Therefore, we affirm the State Board's conclusion that it was lawful and reasonable for the RIF policy not to require realignment and that the dismissal of Abeyta was not arbitrary and capricious. Accordingly, the court of appeals is reversed and its memorandum opinion vacated. The decision of the State Board is affirmed and reinstated in its entirety.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and STOWERS and WALTERS, JJ., concur.

SOSA, Senior Justice, dissenting and adopting the opinion of the Court of Appeals. No. 8230.

Court of Appeals of New Mexico.

Jan. 6, 1987.

**MEMORANDUM OPINION**

GARCIA, Judge.

Mr. Abeyta appeals his discharge from his tenured teaching position by the Local and State School Board and raises the following issues: (1) whether the school district's implementation of a reduction in force of its tenured personnel based on projected funds and enrollment was proper; (2) whether the School Board used arbitrary and unreasonable methods of performance evaluation to select a tenured teacher for dismissal pursuant to a reduction in force for the school year 1984–1985; and (3) whether the School Board unlawfully failed and refused to transfer or realign

the staff to avoid dismissing a tenured teacher.

## ISSUE NO. 1

Mr. Abeyta argues that is was improper for the school district to base its reduction in staff on projections. We disagree.

We review this case by looking at the whole record. *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 681 P.2d 717 (1984). We will not alter the decision of the State Board unless we are convinced that the Board's decision is unreasonable, not supported by substantial evidence, or not in accordance with the law. *Board of Education of Alamogordo Public Schools District No. 1 v. Jennings*, 98 N.M. 602, 651 P.2d 1037 (Ct.App.1982).

The State Board is invested with broad discretion to determine its policy. *Jennings*. It is a question of policy whether to base reduction in force (RIF) matters on projections or actual figures. It is unfortunate that the projections in this case were in error; nevertheless, we cannot say that the State and Local boards decision to use them was unreasonable. It would be inappropriate to require school boards to wait until the students have actually enrolled or until funds are actually received before planning their needs for the upcoming school year. It is sound business practice to rely on financial projections to plan for the future. There is broad discretion in this area and the practice itself is reasonable. Thus, we affirm the Boards' decision as to Issue No. 1.

## ISSUE NO. 2

Mr. Abeyta's challenge to the methods of performance evaluation used to select a teacher for dismissal pursuant to RIF as being arbitrary and unreasonable is without merit. The choice of Ms. Padilla over Mr. Abeyta was supported by substantial evidence.

Although Mr. Abeyta argues to the contrary, the evaluator testified that he observed Mr. Abeyta several times while he was teaching an art class. It is true that the evaluator had to rely on three-year-old data in evaluating Mr. Abeyta, but he felt that he had the same level of familiarity with Mr. Abeyta's performance in the area of art as he did with Ms. Padilla's. While this may not have presented the ideal situation upon which to base an evaluation, it was evidence that supported the decision. The State Board was free to accept the evaluator's conclusions. *Cf. Jennings; see Board of Education of the City of Albuquerque v. New Mexico State Board of Education*, 88 N.M. 10, 536 P.2d 274 (Ct. App.1975).

## ISSUE NO. 3

In his final issue, Mr. Abeyta argues that the school district acted improperly when it refused to transfer or realign the staff to avoid dismissing him, a tenured teacher, pursuant to a RIF. We agree with the argument.

At the time of Mr. Abeyta's discharge, New Mexico adhered to a strong public policy that favored retention of tenured teachers. The legislature, too, recognized the sound policy of retaining teachers who have become increasingly valuable by reason of their experience. *AG Op. No. 63–152* (rendered under former law). In *Penasco Independent School District No. 4 v. Lucero*, 86 N.M. 683, 526 P.2d 825 (Ct. App.1974), there were no grounds personal to the tenured teacher that would support the School Board's decision to terminate. Such is the situation in the case at bar. This court, in *Penasco*, held that absent grounds personal to the teacher, it was necessary to make an affirmative showing that there was no position available for which the tenured teacher was qualified. *Id.* at 684, 526 P.2d 825; *see, e.g., Swisher v. Darden*, 59 N.M. 511, 287 P.2d 73 (1955); *Ft. Sumner Municipal School Board v. Parsons*, 82 N.M. 610, 485 P.2d 366 (Ct. App.), *cert. denied*, 82 N.M. 601, 485 P.2d 357 (1971).

In his brief-in-chief, Mr. Abeyta offered several alternatives the School Board could have utilized to avoid discharging him. At the time of the implementation of the RIF plan, Chris Carson was non-tenured and did not hold a certification in library science, despite his position in the district as high school librarian. Mr. Abeyta is also not

**6**

certified in library science, but was a tenured teacher in the district. Although Carson obtained certification by the time the State Board held it's de novo review, Mr. Abeyta could have been certified had he been given the opportunity. We are unpersuaded by the State's attempt to distinguish this case from *Penasco* because Mr. Abeyta did not repeatedly express a desire to take the necessary course for library certification. Absent a clear refusal to become certified, Mr. Abeyta, as a tenured teacher, was entitled to the protection of the *Penasco* rule.

Realignment of the Local board's teaching staff would have avoided the dismissal of any tenured teachers. Mr. Sampson, a social studies teacher, was certified in library science. Mr. Carson was certified in language arts. It is possible that the School Board could have moved Sampson to the library, Carson into language arts, where there were two open positions, and Mr. Abeyta could have retained his social studies class. The School Board makes much of the fact that Mr. Sampson's certification would only be good until 1989. We consider this a somewhat frivolous argument since, with his current certification, Mr. Sampson would have had nearly five years in which to become recertified. Additionally, there has been no evidence, substantial or otherwise, that a realignment would have had a deleterious effect on the quality of the academic program. Carson, Sampson and Abeyta were each certified in different subjects. Realigning these teachers so that each was teaching a subject for which he was certified cannot be considered injurious to the educational program. Any other conclusion would render the concept of certification a nullity.

We fully recognize that a reviewing court is not free to substitute its judgment for that of the fact finder and that teacher assignment is a matter reserved to school administrators. Yet, by Mr. Abeyta's discussion of teacher realignment, we are persuaded that the School Board cannot demonstrate that there was no position available which Mr. Abeyta was qualified to teach. For these reasons, we consider this case to be controlled by *Penasco Indepen-*dent *School District v. Lucero* and reverse the School Board's decision. *See Swisher v. Darden; Ft. Sumner Municipal School Board v. Parsons.*

The relief to which Mr. Abeyta is entitled can be found in NMSA 1978, Section 22–10–18(B) (Repl.Pamp.1984) (as it existed at the time of Mr. Abeyta's discharge). That statute provides that if a teacher's discharge is reversed on appeal:

> [p]ayment of compensation to the person shall be reinstated in full but subject to any additional compensation allowed other certified school instructor or administrator of like qualifications and experience employed by the school district or state agency and including reimbursement for compensation during the entire period the compensation was terminated less an offset for any compensation received by the person from a school district or state agency during the period the compensation was terminated.

Reversed.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.