2005-NMCA-069

114 P.3d 322

**Cari I. AGUILERA, Plaintiff–Appellant,**

v.

**BOARD OF EDUCATION, Hatch Valley Public Schools, Defendant–Appellee.**

No. 23895.

Court of Appeals of New Mexico.

April 6, 2005.

Certiorari Granted, 29,190, June 2, 2005.

William L. Lutz, Martin, Lutz, Roggow, Hosford & Eubanks, P.C., Las Cruces, for Appellant.

Robert D. Castille, Castille & Ortiz, LLC, Los Alamos, for Appellee.

## OPINION

VIGIL, J.

{1} This case requires us to decide whether a school board can discharge a certified school teacher before her current employment contract expires solely because of a reduction in force (RIF). We hold that it cannot because a RIF is not "just cause" to discharge a teacher under the existing statutory scheme. We therefore reverse the arbitrator's decision and remand for proceedings consistent with this opinion.

{2} The employment of school personnel is governed by the School Personnel Act, (the Act) which is now codified at NMSA 1978, §§ 22–10A–1 to –39 (2003) by virtue of 2003 N.M. Laws ch. 153, which amended, repealed, enacted, and recompiled several provisions of the Act. The Act as it existed prior to the 2003 changes controls the resolution of this dispute. *See* NMSA1978, §§ 22–10–1 to –27 (1975, as amended through 2002).

Herein we will refer to the 2003 statutory citations where provisions of the 2001 School Personnel Act were not changed, but were simply recodified by the 2003 legislation.

## BACKGROUND

{3} Cari Aguilera (Aguilera) was employed by the Board of Education, Hatch Valley Public Schools (School Board) as an art teacher at Hatch High School for the 2000–2001 and 2001–2002 school years. At the end of the 2002 school year in May, the School Board agreed to employ her for a third consecutive year, but at Hatch Middle School rather than Hatch High School. *See* § 22–10A–22 (directing that "[o]n or before the last day of the school year of the existing employment contract" the school board "shall serve written notice of reemployment or termination on each certified school instructor employed by the school district" and providing that "[a] notice of reemployment shall be an offer of employment for the ensuing school year"). Aguilera delivered a timely written acceptance of the offer, which resulted in a binding employment contract being created for the 2002–2003 school year. Section 22–10A–23(B) ("Delivery of the written acceptance of reemployment by a certified school instructor creates a binding employment contract between the certified school instructor and the local school board … until the parties enter into a formal written employment contract."). The formal written contract between Aguilera and the School Board was signed on September 5, 2002.

{4} The offer to employ Aguilera, and her acceptance of the offer, occurred when funding for the Hatch Valley Public School System was not in place for the upcoming year. In May 2002, the Hatch Valley Public School System was aware it was about to lose substantial federal funds for a program that had existed for several years and that program had a termination date in July 2002, and it was also made aware in May 2002 that there would be substantial short falls or decreased funding from the State Equalization Guarantee Funding Program. On September 16, 2002, the School Board learned that the Hatch Valley Public School System would receive approximately $1,215,000 less for the 2002–2003 school year than it had during the previous school year. Due to this reduction, the School Board approved a RIF of school personnel on September 23, 2002. As part of the RIF, the School Board elected to eliminate the Hatch Middle School art program on September 30, 2002. The following day, the Superintendent of Hatch Valley Public Schools sent Aguilera a letter notifying her that he intended to discharge her because her position would be eliminated on October 30, 2002.

{5} Aguilera exercised her statutory right to a hearing before the School Board, challenging her discharge. A hearing was held on November 14, 2002, and the School Board upheld the decision of the Superintendent. Aguilera then appealed the School Board's decision to an independent arbitrator.

{6} Despite some initial confusion about the applicable statutes, the parties subsequently agreed that the Superintendent's letter to Aguilera was sent to her pursuant to Section 22–10A–27(A) (stating that to discharge a certified school employee, the superintendent shall serve written notice of intent to discharge on the employee, stating in the notice the cause for the recommendation, and advising the employee of the right to a discharge hearing before the local school board); that Aguilera properly requested a hearing before the School Board pursuant to Section 22–10A–27(B) (providing that a school employee who receives a notice of intent to recommend discharge may request a hearing before the local school board); that the School Board held a discharge hearing pursuant to Section 22–10A–27(C) through (J) (prescribing the procedures for the local school board to follow in conducting a discharge hearing, and requiring the local superintendent to prove by a preponderance of the evidence that, at the time of the notice of intent to recommend discharge, the superintendent had just cause to discharge the employee); and that the appeal of the School Board's decision would be held before an arbitrator pursuant to Section 22–10A–28 (providing for an appeal de novo to an independent arbitrator by a certified school employee who is aggrieved by a decision of a local school board).

{7} On February 20, 2003, the arbitrator heard Aguilera's appeal. Following the hearing, the arbitrator stated this appeared to be a case of a qualified individual "with an excellent work history with the Hatch Valley Public School System" losing her job "as a result of a failure on management's part to get its financial house in order." He recognized that the School Board was required to establish just cause to discharge Aguilera by a preponderance of the evidence and that the applicable statute defines "just cause" as "a reason that is rationally related to an employee's competence or turpitude or the proper performance of his duties and that is not in violation of the employee's civil or constitutional rights." Section 22–10A–2(F). While the arbitrator found that there was "clearly" no just cause to discharge Aguilera as defined in the statute, the arbitrator nevertheless concluded that "there was unfortunately just cause as defined by the authorized RIF policy of the Hatch Valley Public School system due to the loss of funding." Aguilera appeals the arbitrator's decision. *See* § 22–10A–28(M) (providing that an appeal from the arbitrator's decision is taken by filing notice of appeal as provided by the rules of appellate procedure); *see also Bd. of Educ. v. Harrell,* 118 N.M. 470, 485, 882 P.2d 511, 526 (1994) (holding that Section 22–10–17.1(M), now codified as Section 22–10A–28(M) is unconstitutional to the extent that it limits the right of appeal to cases "where the decision was procured by corruption, fraud, deception or collusion" (internal quotation marks omitted)).

**STANDARD OF REVIEW**

{8} We determine whether substantial evidence supports the arbitrator's factual findings, and we review his conclusions of law de novo. *See Harrell,* 118 N.M. at 486, 882 P.2d at 527 (holding that under compulsory arbitration statutes due process is satisfied by substantial evidence review of findings of fact and de novo review of questions of law). The construction of a statute is a question of law subject to de novo review. *Santa Fe Pub. Schs. v. Romero,* 2001–NMCA–103, ¶ 10, 131 N.M. 383, 37 P.3d 100 ("We interpret statutes de novo.").

**DISCUSSION**

{9} On appeal, Aguilera contends that the Act prohibits the discharge of an employee unless there is just cause to do so and that the School Board did not have just cause under the Act to discharge her. The School Board responds that (1) proper construction of the Act allows the School Board to discharge Aguilera for reasons other than just cause as defined in the Act, (2) strong policy considerations support the ability of the School Board to discharge employees for financial reasons, and (3) terminating the employment of school employees pursuant to a RIF has been judicially approved.

**A. Discharge Under the School Personnel Act**

{10} Our principal objective in interpreting a statute "is to determine and give effect to the intent of the legislature." *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (internal quotation marks and citation omitted). The "primary indicator" of the legislature's intent is the plain language of the statute, and we are to give the words used in the statute their ordinary meaning unless the legislature indicates a different intent. *Alba v. Peoples Energy Res. Corp.,* 2004–NMCA–084, ¶ 17, 136 N.M. 79, 94 P.3d 822. Where the legislature defines words used in the statute, we must interpret the statute according to those definitions. *Southwest Land Inv., Inc. v. Hubbart,* 116 N.M. 742, 743, 867 P.2d 412, 413 (1993); *see* 2A Norman J. Singer, *Statutes & Statutory Construction* § 47:07, at 227–28 (6th ed. 2000) ("As a rule a [statutory] definition which declares what a term means is binding upon the court.").

{11} The Act is very specific and precise in describing when a school board can discharge a certified teacher with whom it has an existing contract. We focus our attention on the statutory definitions of "discharge" and "just cause."

{12} Under the Act, the "discharge" of a certified school employee is the "act of severing the employment relationship ... prior to the expiration of the current employment contract." Section 22–10A–2(A). Since the

School Board ended Aguilera's employment prior to the expiration of her contract, it "discharged" her. *See Romero,* 2001–NMCA–103, ¶ 11, 131 N.M. 383, 37 P.3d 100 (determining that since the school board severed employment relationship of certified school employee before current contract expired, discharge provisions of the Act applied).

{13} Moreover, the Act directs that a school board "may discharge a certified school employee only for just cause." Section 22–10A–27(A). It defines "just cause" as a "reason that is rationally related to an employee's competence or turpitude or the proper performance of [her] duties and that is not in violation of the employee's civil or constitutional rights." Section 22–10A–2(F). Pursuant to the plain terms of the statute, it was incumbent upon the School Board to demonstrate by a preponderance of the evidence to the arbitrator that Aguilera's "discharge" was based upon her performance, competence, or turpitude. *See In re Termination of Kibbe,* 2000–NMSC–006, ¶ 14, 128 N.M. 629, 996 P.2d 419 (holding that evidence failed to prove a relationship between competence or ability to teach or coach and the conduct did not involve moral turpitude). The arbitrator found that Aguilera never "had any negative reports in terms of job performance, competence or suggestion of moral turpitude, or ever failed to properly perform [her] duties while employed by the Hatch Valley Public School System." This finding is undisputed and not challenged by the School Board. Therefore, the statutory basis to "discharge" Aguilera is lacking, notwithstanding the RIF. *See Byrd v. Greene County Sch. Dist.,* 633 So.2d 1018, 1025 (Miss.1994) (holding that the "school district's eleventh hour realization of its financial predicament was not good cause for recission of teacher's already renewed contract" in absence of statutory authority to do so).

{14} An examination of the statutory evolution of the applicable statutes reinforces our conclusion. In 1921, the Supreme Court noted that except when a complaint was made that a teacher was afflicted with tuberculosis, there was no statutory provision for dismissal of a teacher. *Tadlock v. Sch. Dist. No. 29 of Guadalupe County,* 27 N.M. 250, 256, 199 P. 1007, 1009 (1921). Under these circumstances, the general rule was that "there exists in the employing agency an implied power to dismiss the teacher for *adequate cause.*" *Id.* (emphasis added). We assume but do not decide that lost revenues, such as in this case, could constitute "adequate cause." *See Funston v. Dist. Sch. Bd.,* 130 Or. 82, 278 P. 1075, 1076–77 (1929) (holding that dismissal of a teacher is permissible when the dismissal is not personal to the teacher, but results from her position being abolished in good faith by reason of a program of economy whereby the position is abolished).

{15} In 1941, the legislature for the first time adopted a statute addressing discharge of a certified school teacher, stating, "[n]o teacher having a written contract shall be discharged except upon *good cause.*" 1941 N.M. Laws ch. 202, § 3 (emphasis added). The statute did not define "discharge" and it did not define "good cause." We assume that "discharge" meant to dismiss from employment during the term of a contract. We also continue to assume that lost revenues, such as in this case, could constitute "good cause" under this statute. *See also Funston,* 278 P. at 1077.

{16} In 1967, the legislature decreed that a local school board could discharge a certified school teacher during the term of a written employment contract only after "finding *cause* for discharging the person *pursuant to the employment contract* with the person *or* finding *any other good and just cause* for discharging the person." 1967 N.M. Laws ch. 16, § 119 (emphasis added). Again, the statute did not define "discharge" and it did not define "cause." Our assumptions as to the meanings of these words in the statute remain. Changes were made to the statute in 1975, but the foregoing provisions were not affected. The prerequisite of "finding *cause* for discharging the person *pursuant to the employment contract* with the person *or* finding *any other good and just cause* for discharging the person" before a discharge could occur during the term of

the employment contract remained. 1975 N.M. Laws ch. 306, § 12 (emphasis added).

{17} In 1990, the legislature revisited the issue. It now simply stated that a board could discharge a certified school teacher "during the term of his written employment contract *only for good and just cause.*" 1990 N.M. Laws ch. 90, § 4 (emphasis added). The legislature now defined "discharge" to mean "the act of severing the employment relationship with an employee prior to the expiration of the current employment contract." 1990 N.M. Laws ch. 90, § 1. However, it still did not define "just cause." We therefore continue to assume that as of 1990, lost revenues, such as in this case, could constitute "just cause." *See Smith v. Bd. of Educ.,* 334 N.W.2d 150, 152 (Iowa 1983) (stating that a school district's declining enrollment and budgetary constraints may constitute "just cause" not to renew a teacher's contract); *Laird v. Indep. Sch. Dist. No. 317,* 346 N.W.2d 153, 156 (Minn.1984) (stating substantial reduction in enrollment was sufficient basis for placing teacher on "unrequested leave"); *Funston,* 278 P. at 1077; *Adams v. Clover Park Sch. Dist. No. 400,* 29 Wash. App. 523, 629 P.2d 1336, 1340 (1981) (holding that a school district can elect not to renew a teacher's contract because termination of the position is required by budgetary concerns); *see also Lee v. Giangreco,* 490 N.W.2d 814, 818 (Iowa 1992) (noting that "just cause" for termination of a teacher's contract may turn on budgetary constraints).

■ {18} This all changed in 1991. The requirement of "just cause" for terminating a certified school teacher's contract during the term of the employment contract remained, and the definition of "discharge" was not changed. 1991 N.M. Laws ch. 187, §§ 3, 7. However, the legislature for the first time defined "just cause," stating it "means a reason that is rationally related to an employee's competence or turpitude or the proper performance of his duties and that is not in violation of the employee's civil or constitutional rights." 1991 N.M. Law ch. 187, § 3, now codified as Section 22–10A–2(F). This was the state of the law when Aguilera was discharged by the School Board on October 30, 2002. A RIF was not included in the definition of "just cause."

{19} The School Board argues that a provision of the Act which requires contracts with certified school personnel to be on forms approved by the state board allows for a broader meaning of "cause." Section 22–10A–21(A) requires all contracts between a school board and certified school personnel to "be in writing on forms approved by the state board." These forms must "contain and specify" certain items, including "the *causes for termination* of the contract." *Id.* (emphasis added). Since the statute refers to "causes" instead of the statutory definition of "just cause" set forth in Section 22–10A–2(F), the School Board argues that the legislature intended to allow the discharge of an employee for reasons in addition to statutory "just cause." However, Section 22–10A–21(A) refers to "causes for termination" not "causes for discharge," and the argument overlooks the difference between a "termination" and a "discharge." In contrast to a "discharge," a "termination" is "in the case of a certified school employee, the act of not reemploying an employee for the ensuing school year and, in the case of a non-certified school employee, the act of severing the employment relationship with the employee." Section 22–10A–2(D). Aguilera was not "terminated"; she was "discharged."

{20} The School Board also argues that Aguilera was properly discharged pursuant to an express provision in the contract she signed. In pertinent part, the contract states, "[t]his contract and the parties hereto are and shall continue to be subject to applicable laws of the State of New Mexico" and that

> *[t]his contract may also be cancelled by the Board for cause not personal to the Instructor when a reduction in personnel is required* as a result of decreased enrollment or a decrease or revision of educational programs or insufficient legislative appropriation or authorization being made by the State and/or federal government for the performance of this contract, in accordance with the New Mexico Statutes and

any applicable rules and regulations of the State and Local Boards of Education.

(Emphasis added.)

{21} Aguilera's contract is a form certified school instructor contract approved and promulgated by the state board pursuant to Section 22–10A–21(A). It is set forth in 6.66.2.8 NMAC (2000). The form is derived from State Board of Education Regulation No. 72 25, Certified School Instructor Contract, filed January 8, 1973; and State Board of Education Regulation No. 88–1, Certified (Licensed) School Instructor Contract, filed February 2, 1988, as set forth in the history at the end of 6.66.2.8 NMAC. The statutory evolution we have set forth above in Paragraphs 15–18 establishes that in 1973 and 1988, "just cause" was not statutorily defined and a loss of funds might constitute "just cause." According to the statutes in existence at that time, a RIF could be a "cause" for discharge "pursuant to the employment contract." However, "just cause" was specifically defined by the legislature in 1991, and a RIF was not included. Amendments made to 6.66.2.8 NMAC in Amendment 1 to State Board of Education Regulation No. 88–1, Certified (Licensed) School Instructor Contract, filed April 3, 1992, apparently did not take into account the requirements made in 1991 that a discharge could occur only for "just cause" with a specific definition of "just cause" that did not include a RIF.

{22} On its face, it appears that there is a direct conflict between the employment contract form and the statute which directs that Aguilera could only be "discharged" for "just cause." The state board has no authority to promulgate a regulation that conflicts with a statute. *See N.M. Pharm. Ass'n v. State,* 106 N.M. 73, 75, 738 P.2d 1318, 1320 (1987) (stating a board "has no power to adopt a rule or regulation that is not in harmony with [its] statutory authority"); *accord* 1A Norman J. Singer, *Statutes & Statutory Construction* § 31:2, at 713–14 (6th ed.2002) (stating that "the provisions of the statute will prevail in any case of conflict between a statute and an agency regulation"). In fact, 6.66.2.3 NMAC states that the statutory authorities for its adoption are Section 22–10A–21 and NMSA 1978, § 22–2–

1 (2003). Section 22–2–1 expressly states that the state board "is the governing authority and shall have control, management and direction of all public schools, *except as otherwise provided by law.*" (Emphasis added.) Therefore, to the extent that the model contract provisions conflict with the Act they are void and unenforceable.

{23} For all the foregoing reasons, we hold that without "just cause" as defined by the Act, the School Board was without authority to discharge Aguilera.

**B. Public Policy**

{24} The School Board also argues that public policy dictates that it be allowed to cope with changes in student enrollment and funding at the beginning, middle, or end of the school year by allowing it to discharge a certified school employee for reasons other than a teacher's performance, competence, or turpitude. The School Board argues that this public policy will be violated if Section 22–10A–27(A) is read to require "just cause" as defined in Section 22–10A–2(F).

{25} The state board has plenary authority over the public schools "except as otherwise provided by law." *See* § 22–2–1(A) ("The state board is the governing authority and shall have control, management and direction of all public schools, except as otherwise provided by law."). The state board adopted 6.67.3.6 NMAC (2000), which allows a local school board to discharge or terminate licensed school personnel pursuant to a RIF, but it must be "in accordance with the Public School Code." 6.67.3.8 NMAC (2000). The present case involves solely discharge, not termination, and we address only the issue of discharge. The Act, with the limiting definition of "just cause" in relation to discharge is part of the Public School Code. NMSA 1978 § 22–1–1 (2004) (stating NMSA 1978, Chapter 22, may be cited as the Public School Code). We do recognize that a local school board may add or abolish teaching positions in performing its fiscal responsibilities. *See* NMSA 1978, § 22–5–4(C) (2004) (stating local school board has power to "review and approve the school district budget"); *Howard v. W. Baton Rouge Parish Sch. Bd.,* 843 So.2d 511, 514 (La.Ct.App.2003) ("A parish school board has broad responsibilities in administering the public schools.

Included is the power, when acting in good faith, to consolidate positions or to abolish them."); *Adams,* 629 P.2d at 1340 ("The determination of educational goals, programs and curricula is a matter within the broad discretion of the school board. To establish these goals or to meet the financial conditions of the district, the board may add or eliminate teaching positions." (citations omitted)). Nothing we say herein prohibits a RIF that complies with the applicable statutes.

{26} However, the legislature has identified which public policies will be favored by defining the conditions under which a discharge may be implemented. Our Supreme Court has recognized that the "purpose of the Certified School Personnel Act [is] to promote a sound public policy of retaining in the public school system teachers who have become increasingly valuable by reason of their experience." *Atencio v. Bd. of Educ.,* 99 N.M. 168, 170, 655 P.2d 1012, 1014 (1982). The "Certified School Personnel Act" was renamed the "School Personnel Act" in 1991. 1991 N.M. Laws ch. 187, § 2. The statutes here are clear and unambiguous in advancing this public policy of retaining experienced public school teachers. In the face of such a clear statutory expression of public policy, we do not second guess, but enforce, the policy choice made by the legislature. *See Anthony Water & Sanitation Dist. v. Turney,* 2002–NMCA–095, ¶ 10, 132 N.M. 683, 54 P.3d 87 ("[I]f the meaning of a statute is clear, this Court is not to second guess the policy choice made by the legislature."); *Benavidez v. Sierra Blanca Motors,* 122 N.M. 209, 214, 922 P.2d 1205, 1210 ("[I]t is the particular domain of the legislature, as the voice of the people, to make public policy . . . . Courts should make policy . . . only when the body politic has not spoken." (internal quotation marks and citation omitted) (alteration in original)); *State ex rel. State Eng'r v. Lewis,* 121 N.M. 323, 325, 910 P.2d 957, 959 (Ct.App. 1995) ("If the meaning of a statute is truly clear, it is the responsibility of the judiciary to apply it as written and not second guess the legislature's policy choices."). There are valid policy considerations in favor and against assuring teachers their employment contracts will be honored during their terms except for reasons based upon their perform-

ance, competence, or turpitude. We find the following language from *Byrd,* 633 So.2d at 1024–25 particularly instructive:

The premises underlying a contract between a school district and a teacher are indistinguishable from any other employment contract. The district promises to employ the teacher for a given term, subject to the terms of that contract. As consideration, the teacher promises to perform his job for the duration of the contract. . . . Were we to accept the District's argument [that it could rescind a teacher's already renewed contract because of its financial predicament], teacher's contracts would be vulnerable to recission any time a school district found itself in financial straits. The legislature has not so provided. . . . It is within the province of the legislature to determine what effect, if any, a district's financial woes may have on teacher contracts and to grant the authority to amend those contracts accordingly.

(Citation omitted.) We perceive no mistake or absurdity that warrants departing from the plain language of the Act. We therefore reject the School Board's public policy argument. Whether the Board's public policy argument should be applied to a termination based on a RIF is a question that is not before us, and we express no opinion on it.

## C.  Judicial Endorsement of Reductions–in–Force

{27} Finally, the School Board argues that precedent prohibits us from reaching the result we do because RIFs have previously been judicially sanctioned and approved. We disagree because the precedent cited did not present the issue which confronts us here and because the School Board fails to consider the statutory framework underlying that precedent.

{28} The School Board cites *New Mexico State Board of Education v. Abeyta,* 107 N.M. 1, 751 P.2d 685 (1988), *Penasco Independent School District No. 4 v. Lucero,* 86 N.M. 683, 526 P.2d 825 (Ct.App.1974), and *Swisher v. Darden,* 59 N.M. 511, 287 P.2d 73 (1955), *superceded by statute on other grounds as stated in Sanchez v. Bd. of Educ.,* 80 N.M. 286, 454 P.2d 768 (1969). However, all of these cases dealt with the discharge of a tenured teacher when the local board re-

fused to renew the contract of the tenured teacher for a subsequent school year under a RIF policy; none of them dealt with discharging a teacher during an existing contract under a RIF policy, as in this case. *Abeyta*, 107 N.M. at 2, 751 P.2d at 686; *Swisher*, 59 N.M. at 513, 287 P.2d at 74; *Lucero*, 86 N.M. at 683–684, 526 P.2d at 825–26. Furthermore, the issue in *Abeyta* was whether it was lawful and reasonable for a RIF policy not to require a staff realignment which might have retained a tenured teacher when such a realignment would seriously affect the educational program; and the issue in *Swisher* and *Lucero* was whether the evidence established that as a result of the RIF, no position was available for which the tenured teacher was qualified. *Abeyta*, 107 N.M. at 3, 751 P.2d at 687; *Swisher*, 59 N.M. at 515, 287 P.2d at 76; *Lucero*, 86 N.M. at 684, 526 P.2d at 826. These cases are therefore not applicable.

{29} Even more important, as we have already pointed out in our discussion of the statutory evolution of the applicable statutes, the underlying statutory framework was different when *Abeyta*, *Swisher*, and *Lucero* were decided. In 1991, the legislature for the first time defined what constitutes "good cause." As we have already discussed, we are obligated to apply that statutory definition in this case.

### D. Aguilera's Other Arguments

{30} Aguilera also argues that the arbitrator denied her a de novo hearing and that he erroneously concluded that her discharge was effective on October 31, 2002. However, because we conclude that the School Board exceeded its statutory authority by discharging Aguilera without just cause, we need not reach these arguments.

### CONCLUSION

{31} We reverse the arbitrator's decision and remand for further proceedings consistent with this opinion.

{32} **IT IS SO ORDERED.**

PICKARD and SUTIN, JJ., concur.