2007-NMCA-118

167 P.3d 931

**GLADDEN MOTOR CO., INC., a
New Mexico corporation,
Plaintiff–Appellant,**

v.

**EUNICE SCHOOL BOARD,
Defendant–Appellee.**

No. 26,550.

Court of Appeals of New Mexico.

May 24, 2007.

Certiorari Denied, No. 30,475, Sept. 6, 2007.

Templeman and Crutchfield, C. Barry Crutchfield, Lovington, NM, for Appellant.

Heidel, Samberson, Newell, Cox & McMahon, Michael Newell, Lovington, NM, for Appellee.

## OPINION

SUTIN, Chief Judge.

{1} Appellant Gladden Motor Co., Inc. (Gladden) appeals from an adverse judgment (1) on its claim against the Eunice School Board (Eunice) in Eunice, New Mexico, for sums due under a school bus contract, and (2) on Eunice's counterclaim for reimbursement of prepaid, unearned sums received by Gladden from the State for school bus purchases. The appeal raises contract and statutory construction issues with respect to whether the New Mexico Department of Education (the Department) and a local district have authority to obtain reimbursement from a school bus operator of unearned amounts paid to the operator for bus purchases when the school bus contract with the operator is not renewed after its term has expired. We affirm.

## BACKGROUND

{2} Gladden provided school bus transportation for students in Eunice under school bus service contracts entered into annually over many years. The parties signed a contract (the contract) for the school year 2003–04. Like the earlier contracts, the contract could be renewed at Eunice's option. During the 2003–04 school year, Eunice decided that it would operate its own bus system for the 2004–05 school year. Eunice gave notice to Gladden that their contractual relationship would terminate at the expiration of the 2003–04 contract term. Eunice did not make the April and May 2004 contract payments of $29,290.83. Eunice withheld the money to apply to purchase allowance/rental fees (rent-

al fees) paid to Gladden in connection with Gladden's bus purchases. Eunice also sought an additional $35,898.17 from Gladden for rental fees. Eunice took these actions after being advised by the Department that Eunice was required to collect $60,381 from Gladden in rental fees as provided by statute.

{3} Gladden completed its bus transportation obligations under the contract and then sued Eunice to recover the unpaid contract amounts. Eunice counterclaimed for the $35,898.17 in rental fees. After entering findings of fact and conclusions of law, the district court entered judgment dismissing Gladden's claims with prejudice and awarding Eunice the amount it sought on its counterclaim. It is from this judgment that Gladden appeals.

## DISCUSSION

{4} Relying on the wording of the contract, Gladden contends that the Department and Eunice had authority to collect rental fees only if the contract was terminated before the contract term expired, and asserts that the contract was not terminated; rather, it went to full term and was not renewed. Gladden points out that the contract provision for rental fee reimbursement is predicated solely upon termination before expiration of the contract. The contract provision on which Gladden relies reads:

13.14 TERMINATION OF CONTRACT BY BOARD

Subject to procedures hereinafter set forth, the BOARD may terminate this contract before its expiration date for violation of law, terms of the contract, or regulations and policies of the State Board of Education or BOARD. The procedures for termination of this contract are as follows:

. . . .

f. In the event that this contract is terminated, the State Superintendent of Public Instruction shall calculate the remaining number of years that the bus could be used based on a twelve-year replacement cycle and calculate a value reflecting that use. The DISTRICT shall deduct an amount equal to that value from any remaining amount due on the contract. If no balance remains on the contract, the CONTRAC-

TOR shall reimburse the DISTRICT an amount equal to the value calculated.

(Emphasis omitted.) Gladden argues that this contract language is clear and unambiguous, and must be enforced as written. Gladden asserts that the district court improperly rewrote the contract so as to grant authority in the Department and Eunice to impose a rental fee reimbursement obligation where none exists in the contract or by New Mexico statute or regulation. *See Lewis v. Dairyland Ins. Co.*, 113 N.M. 686, 689, 831 P.2d 985, 988 (1992) (stating that the court would not rewrite the parties' contract); *Espinosa v. United of Omaha Life Ins. Co.*, 2006–NMCA–075, ¶ 26, 139 N.M. 691, 137 P.3d 631 ("When a contract or agreement is unambiguous, we interpret the meaning of the document and the intent of the parties according to the clear language of the document, and we enforce the contract or agreement as written."). Therefore, according to Gladden, the district court erred in dismissing its claim and in awarding judgment to Eunice.

{5} School bus service contracts must be "in writing on forms approved by the [Department]," and the contracts "shall be approved by the local school board." NMSA 1978, § 22–16–3(B) (1995). Operators like Gladden are compensated by payment for services and by way of rental fees used by the operator to purchase buses. *See* NMSA 1978, § 22–8–27(A), (C) (1995) (amended 2006) (requiring the establishment of systematic programs "for the purchase of necessary school bus transportation equipment" and, with respect to the establishment of "a system for the utilization of contractor-owned buses," requiring "a schedule for the payment of rental fees for the use of contractor-owned buses"). Rental fees are paid to the operator within a five-year period, although school buses are expected to be in service for twelve years. *See* § 22–16–3(D) (providing that the term of a school bus contract cannot exceed five years, and that "[a] . . . contract may provide, at the expiration of the term of the contract, for annual renewal"); § 22–8–27(C) (providing that "no school district shall pay rental fees for any one bus for a period in excess of five years" and that if a school bus service contract is terminated, the opera-

tor is to reimburse the school district rental fees based on a value calculated from "the remaining number of years that a bus could be used based on a twelve-year replacement cycle"). When a contract is terminated, the local school district is to have the operator-owned buses appraised, and if the operator whose contract was terminated agrees, the succeeding operator is to purchase the buses at the appraised value. *See* § 22–16–3(E).

{6} In the present case, when the contract term expired, Eunice offered to purchase Gladden's buses pursuant to Section 22–16–3(E), but Gladden declined to sell to Eunice. The Department and Eunice acted to collect prepaid rental fees as provided by Section 22–8–27(C), which in pertinent part states:

> In the event a school bus service contract is terminated, the state superintendent shall calculate the remaining number of years that a bus could be used based on a twelve-year replacement cycle and calculate a value reflecting that use. The local school district shall deduct an amount equal to that value from any remaining amount due on the contract or if no balance remains on the contract, the contractor shall reimburse the school district an amount equal to the value calculated.

{7} Notably, the foregoing statutory provision ties the words, "contract is terminated," to rental fee reimbursement, but the statutes do not define "terminated." However, in expressing this statutory language in its form contract and the contract at issue in the present case, the Department (1) defined "terminate" as occurring "before [the contract] expiration date," (2) prescribed the specific grounds on which Eunice could "terminate" the contract, and (3) permitted rental fee reimbursement only when the contract was "terminated." Gladden's argument stands primarily on the contract and specifically on the provisions stating that Eunice "may *terminate this contract before its expiration date* for violation of law, terms of the contract, or regulations and policies of the [Department or Eunice]," subject, however, to "[t]he procedures for *termination* of this contract" as set out in the contract "[i]n the event this contract is *terminated*." (Emphasis added.)

{8} The district court entered two specific findings using the word "terminate":

14. [Eunice] notified Gladden that [the] contractual relationship with [Eunice] would terminate at the expiration of the 2003–2004 contract term.

15. The common meaning of "terminate" is ... "to bring to an end; to extend only to a limit; to come to an end in time" (Webster's Seventh New Collegiate Dictionary) and "to put an end to; to make to cease; to end." (Black's Law Dictionary Fifth Edition).

The court then stated in its conclusions of law that "The 2003–2004 contract terminated by its own terms" and that "[t]he 'winding up' of the contractual relationship ... is governed by § 22–8–27."

{9} It is unclear from the court's findings of fact and conclusions of law to what extent, if any, the court considered the language of the contract and the manner in which that language varied from that in Section 22–8–27(C). Eunice argues that the intent of Section 22–8–27(C) was that the local school district recover the unearned portion, if any, of rental fees once an operator's bus contract comes to an end for any reason and that there is no reason to make any distinction between termination before or after expiration of the term of the contract in carrying out the purpose of reimbursement. In response to this argument and the district court's apparent view that the statute controls, Gladden argues that it, as well as any operator, has the right to rely on the language of the contract, and that no operator would have notice or knowledge from the contract language that it would be charged rental fees unless there was a termination of the contract before expiration of the term of the contract for one of the causes stated in the contract.

{10} There does appear to have been a "slip between the cup and the lip" when the Department attempted to carry Sections 22–8–27 and 22–16–3 into its form contract. *See Demers v. Gerety,* 92 N.M. 749, 751, 595 P.2d 387, 389 (Ct.App.1978) (setting out the origin of the phrase "there's many a slip 'twixt the CUP and the lip' "). However, we agree

with Eunice that the Legislature's intent was to provide for reimbursement of unearned rental fees at the end of a contract without distinction as to when or how the termination occurred, giving the local school district what it is entitled to and precluding an operator from receiving a windfall. The language of Section 22–8–27(C) bears this out by requiring the local school district to deduct rental fees from any remaining amount due on the contract, but also by requiring that if there is no remaining amount due, the operator is to reimburse the district for the rental fees. It is apparent that the Department's form contract attempted to provide for termination for cause before expiration of the term of a contract, but failed to distinguish between a specific type and time of termination and the termination contemplated under the statutes for rental fee reimbursement.

{11} We hold that the statutes control despite the language of the contract. While we are sympathetic with Gladden's argument, there are four reasons why the district court's decision should be affirmed. First, we think that the obvious intent of the statutes is to obtain reimbursement for the local school district of unearned rental fees to which it is entitled without distinction as to the reason for or time of termination of a school bus service contract. *See City Comm'n of Albuquerque v. State ex rel. Nichols,* 75 N.M. 438, 445, 405 P.2d 924, 928 (1965) ("Statutes should be construed in the most beneficial way of which their language is susceptible to prevent absurdity ..., to favor public convenience, and to oppose all prejudice to public interests."). Second, as to the question of its obligation to reimburse Eunice for unearned rental fees, Gladden had notice of the statutory language before entering into the contract, and were Gladden to have studied the statute and the contract, it would have been put on notice of the discrepancy. Third, an inconsistency between a statute and an agency's form contract mandated by statute should generally be resolved in favor of the statute. *See Aguilera v. Bd. of Educ.,* 2005–NMCA–069, ¶¶ 21–22, 137 N.M. 642, 114 P.3d 322 (stating, in an employee discharge case, that the Department had "no authority to promulgate a regulation that conflicts with a statute," and that to the extent provisions of the form contract conflicted with the statute, the provisions were not enforceable), *aff'd on other grounds,* 2006–NMSC–015, 139 N.M. 330, 132 P.3d 587; *State v. Valles,* 2004–NMCA–118, ¶ 11, 140 N.M. 458, 143 P.3d 496 (determining that where a surety bond is issued pursuant to statutory authority, the bond must be construed according to the statutory requirements); *see also State v. United Bonding Ins. Co.,* 81 N.M. 154, 157, 464 P.2d 884, 887 (1970) (stating, with respect to bail bonds, that "[t]he obligation of the surety is derived from the undertaking and from the laws of the state" and "that the purpose of the law and conditions it requires must be read into any contract of surety"); *Employment Sec. Comm'n v. C.R. Davis Contracting Co.,* 81 N.M. 23, 25, 462 P.2d 608, 610 (1969) (same as *Valles,* relating to surety bond covering contractor's tax liability). Fourth, Gladden did not seek relief based on equitable estoppel, nor has it shown on appeal where it even argued in the district court that it was harmed or prejudiced by, or that it detrimentally relied in any way on the enforcement of its reimbursement obligation where the contract expired at the end of its term instead of being terminated before expiration of its term. *See Kilmer v. Goodwin,* 2004–NMCA–122, ¶¶ 26–28, 136 N.M. 440, 99 P.3d 690 (stating what a party must establish to prevail on a claim of estoppel against the state, including establishing that the party reasonably and detrimentally relied on the government's conduct).

{12} We hold that the district court did not err in granting relief in favor of Eunice. Enforcement of the language in the contract as Gladden seeks does not comport with the language of Section 22–8–27(C) or with legislative intent.

**CONCLUSION**

{13} We affirm the judgment of the district court in favor of Eunice.

{14} **IT IS SO ORDERED.**

WE CONCUR: RODERICK T. KENNEDY, and MICHAEL E. VIGIL, Judges.