2005-NMCA-117

120 P.3d 848

**STATE OF NEW MEXICO ex rel. NEW MEXICO GAMING CONTROL BOARD, Plaintiff–Appellant,**

v.

**TEN (10) GAMING DEVICES and their contents of $3.25 in United States Currency, and Cortney Gwynne, Kerry Gwynne, Gamer's Choice, and Cecil L. Lunceford, Claimants–Appellees.**

**No. 24,479.**

Court of Appeals of New Mexico.

July 26, 2005.

Certiorari Granted, No. 29,410, Sept. 21, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Christopher D. Coppin, Assistant Attorney General, Frank A. Baca, Peggy A. Hardwick, Special Assistant Attorneys General, Albuquerque, NM, Richard E. Olson, Roswell, NM, for Appellant.

Richard A. Hawthorne, Richard A. Hawthorne, P.A., Ruidoso, NM, for Appellees.

*OPINION*

VIGIL, Judge.

{1} The question presented in this case is whether slot machines in a private home that are not used for illegal gambling are gaming machines or gambling devices and therefore subject to forfeiture because they are not licensed under the Gaming Control Act, NMSA 1978, §§ 60–2E–1 to –62 (1997, as amended through 2003)(Act). The Gaming Control Board (Board) appeals from a summary judgment granted to Cortney Gwynne, Kerry Gwynne, and Cecil L. Lunceford (Owners) in its suit seeking to forfeit the machines. We agree that the machines are not subject to forfeiture and affirm.

**BACKGROUND**

{2} The material facts are not disputed. The machines at issue are slot machines in Owners' home. They are not licensed under the Act. Owners acquired them from a distributor licensed in Nevada in November 1997, shortly after the Act took effect. The only persons who played the machines were Owners and their social acquaintances, and the Board does not allege that Owners were involved in illegal gambling. Nevertheless, Board agents seized the machines from the Owners' home in Alamogordo, New Mexico. The Board then filed a forfeiture complaint seeking to forfeit the slot machines. The complaint alleges that the machines are "unlicensed gaming devices" and therefore subject to forfeiture under Section 60–2E–13(D) of the Act and under NMSA 1978, § 30–19–10 (2002) of the Criminal Code. Section 60–2E–13(D) states that "[a]ny unlicensed or illegal gaming machine, except one in the possession of a licensee while awaiting transfer to a gaming operator licensee for licensure of the machine, is subject to forfeiture and confiscation by any law enforcement agency or peace officer." Section 39–19–10 provides for forfeiture of a "gambling device" not licensed under the Act.

{3} The Board and Owners filed motions for summary judgment. The district court concluded that in the absence of proof that anyone made money or profit from operating the slot machines except through winnings as a player, there was no "game," no "gaming activity," no "gaming devices," and no "gaming machines" as defined in the Act. Therefore, the district court concluded the machines are exempt from the Act and not subject to forfeiture. The district court accordingly denied the Board's motion for summary judgment and granted Owners' motion for summary judgment. The Board appeals.

**STANDARD OF REVIEW**

■ {4} We review the order of the district court de novo for two reasons. First, neither party argues that genuine issues of material fact exist, so the only issue remaining is a legal one of whether the law was correctly applied to those facts. *See State*

*Farm Mut. Auto. Ins. Co. v. Barker,* 2004–NMCA–105, ¶ 4, 136 N.M. 211, 96 P.3d 336 (stating that when the existence of genuine issues of material fact is not contested, we review the disposition of motions for summary judgment de novo). Second, this case involves statutory construction, which is also a legal question, subject to de novo review. *See Cerrillos Gravel Prods., Inc. v. Bd. of County Comm'rs,* 2004–NMCA–096, ¶ 4, 136 N.M. 247, 96 P.3d 1167.

## STATUTORY BACKGROUND

■ {5} The machines were seized in November 1999, and the complaint was filed in December 1999. Thereafter, portions of the Act and the Criminal Code were amended in March 2002. *See* 2002 N.M. Laws ch. 4, § 14; 2002 N.M. Laws ch. 102, § 8; 2002 N.M. Laws ch. 103, § 1. Because the "general rule is that statutes apply prospectively unless the [l]egislature manifests clear intent to the contrary," *Gill v. Pub. Employees Ret. Bd.,* 2004–NMSC–016, ¶ 3, 135 N.M. 472, 90 P.3d 491 (internal quotation marks and citation omitted) (alteration in original), and the amendments to the Act and the Criminal Code are silent as to whether they apply retroactively, *see* 2002 N.M. Laws ch. 4, § 23; 2002 N.M. Laws ch. 102, § 19; 2002 N.M. Laws ch. 103, § 2, the amendments only had prospective effect. We therefore decide this case based on the Act and the Criminal Code as they existed prior to the 2002 amendments.

## DISCUSSION

■ {6} "Our principal objective in interpreting a statute is to determine and give effect to the intent of the legislature." *Aguilera v. Bd. of Educ.,* 2005–NMCA–069, ¶ 10, 137 N.M. 642, 114 P.3d 322, *cert. granted,* Sup.Ct. No. 29,190 (internal quotation marks and citations omitted). The "primary indicator" of the legislature's intent is the plain language of the statute, and we are to give the words used in the statute their ordinary meaning unless the legislature indicates a different intent. *Id.* However, "[w]here the legislature defines words used in the statute, we must interpret the statute according to those definitions." *Id.* In construing the applicable statutes, we are also guided by the principles that forfeiture statutes are to be construed strictly against forfeiture because forfeitures are not favored at law and that forfeitures "should be enforced only when within both the letter and the spirit of the law." *In re Forfeiture of Two Thousand Seven Hundred Thirty Dollars and No Cents,* 111 N.M. 746, 748–49, 809 P.2d 1274, 1276–77 (1991); *see also In re Forfeiture of One 1970 Ford Pickup Truck,* 113 N.M. 97, 99, 823 P.2d 339, 341 (Ct.App. 1991) ("[F]orfeitures are not favored at law and statutes are to be construed strictly against forfeiture." (quoting *State v. Ozarek,* 91 N.M. 275, 275, 573 P.2d 209, 209 (1978) (alteration in original) ) ).

### A. Forfeiture Under the Gaming Control Act

{7} The Act declares the State's policy on gaming to be that "limited gaming activities should be allowed in the state if those activities are strictly regulated to ensure honest and competitive gaming that is free from criminal and corruptive elements and influences[.]" Section 60–2E–2(A). Accordingly, "gaming activity" is illegal in New Mexico unless "conducted in compliance with and pursuant to" the Act or some other state or federal law which "expressly permits the activity or exempts it from the application of the state criminal law[.]" Section 60–2E–4.

{8} In keeping with the declared public policy, the Act specifies activities which require licensing pursuant to its provisions: (1) "A person shall not conduct gaming unless he is licensed as a gaming operator." Section 60–2E–13(A); (2) "A person shall not sell, supply or distribute any gaming device . . . for use or play . . . unless he is licensed as a distributor or manufacturer." Section 60–2E–13(B); (3) "A person shall not manufacture, fabricate, assemble, program or make modifications to a gaming device . . . unless he is a manufacturer licensee." Section 60–2E–13(C) (1997) (amended 2002); (4) "A gaming operator licensee or a person other than a manufacturer licensee or distributor licensee shall not possess or control a place where there is an unlicensed gaming machine." Section 60–2E–13(D) (1997) (amend-

ed 2002); and (5) "A person shall not service or repair a gaming device ... unless he is licensed as a manufacturer, is employed by a manufacturer licensee or is a technician certified by a manufacturer and employed by a distributor licensee or a gaming operator licensee." Section 60–2E–13(E) (1997) (amended 2002). Accordingly, the Act provides for manufacturer, distributor, gaming operator, and gaming machine licenses. Section 60–2E–14(A).

{9} Consistent with the foregoing provisions, the Act states that "a person shall not purchase, lease or acquire possession of a gaming device ... except from a licensed distributor or manufacturer." Section 60–2E–13(G) (1997) (amended 2002). The Act provides for severe penalties. "A person who knowingly possesses any gaming device that has been manufactured, sold or distributed in violation of the [Act] is guilty of a fourth degree felony." Section 60–2E–53. Finally, and directly pertinent to this case, the Act provides, "[a]ny unlicensed gaming machine, except one in the possession of a licensee while awaiting transfer to a gaming operator licensee for licensure of the machine, is subject to forfeiture." Section 60–2E–13(D) (1997) (amended 2002).

{10} The foregoing summary demonstrates that the Act addresses a game, gaming, gaming activity, and a gaming machine. These concepts are specifically defined by the Act. First, "gaming" is defined as "offering a game for play." Section 60–2E–3(O). "[G]aming activity" in turn is defined in pertinent part as "any endeavor associated with ... the conduct of gaming[.]" Section 60–2E–3(P). A "gaming device" is "associated equipment or a gaming machine," Section 60–2E–3(Q), and "associated equipment" is "equipment or a mechanical, electromechanical or electronic contrivance, component or machine used in connection with gaming[.]" Section 60–2E–3(E). Finally, a "gaming machine" is defined as "a mechanical, electromechanical or electronic contrivance or machine that, upon insertion of a coin, token or similar object, or upon payment of any consideration, is available to play or operate a game, whether the payoff is made automatically from the machine or in any other manner."

Section 60–2E–3(T). The common, consistent, and necessary component of each of these definitions is a "game." The Act specifically defines a "game" as:

> [A]n activity in which, upon payment of consideration, a player receives a prize or other thing of value, the award of which is determined by chance even though accompanied by some skill; **'game' does not include an activity played in a private residence in which no person makes money for operating the activity except through winnings as a player[.]**

Section 60–2E–3(N) (emphasis added). If there is no "game" as defined, there is no gaming, no gaming activity, no gaming device, and no gaming machine. If there is no gaming machine, it is not required to be licensed, and it is not subject to forfeiture under the Act. In light of this general background, we now turn to the specific arguments made by the Board.

{11} The Board's main argument is that in order to constitute a "gaming machine," a machine does not have to be actually used to play or operate a "game," it only has to be "suitable" or "useable" to play or operate a "game." The Board invites our attention to the definition of a "gaming machine," focusing on the component that a machine which is "available" to play or operate a game is a "gaming machine." *See* § 60–2E–3(T). In making this argument, the Board asserts that the word "available," according to Black's Law Dictionary 132 (5th ed.1979), means "[s]uitable; usable; ... present or ready for immediate use." Under the Board's theory, any mechanical, electromechanical, or electronic contrivance or machine that is "suitable" or "usable" to play or operate a "game" is illegal per se and subject to forfeiture regardless of how it is kept, used, or stored unless it is licensed under the Act. This has been described as the "functional use" test which only requires proof that the machine could be used for gambling purposes to make it subject to forfeiture. *See Monte Carlo Parties, Ltd. v. Webb,* 253 Ga. 508, 322 S.E.2d 246, 249 (1984) ("The functional use test ... only require[s] a showing that the equipment could be used for gambling purposes to establish that [it is] subject to con-

fiscation."). Under this test, a machine is subject to seizure based on the mere possibility that it might be used to play or operate a game, thereby giving the Board almost unfettered discretion in deciding which machines it wants to seize. *See id.* We reject the Board's argument.

{12} The legislature could have easily and plainly defined a "gaming machine" by focusing only on physical characteristics of the machine by defining it as any machine which is "capable" of playing or operating a "game"; any machine which is "suitable" to play or operate a "game"; or any machine which is "usable" to play or operate a "game." Instead, the legislature declared that in order to constitute a "gaming machine," the machine must be "available" to play or operate a "game." This goes beyond focusing on the physical attributes of the machine itself. *See Smith v. One Super Wild Cat Console Mach.,* 10 Or.App. 587, 500 P.2d 498, 499 (1972) ("We think it is the use of a described machine in violation of the statute [for cash or profit] which is proscribed."). The Board's argument relies on an incomplete definition of "available" from a dated version of Black's Law Dictionary. The complete definition of "available" contained in Black's Law Dictionary 132 (5th ed.1979) reads, "[s]uitable; useable; accessible; obtainable; present or ready for immediate use. Having sufficient force or efficacy; effectual; valid." Similarly, Webster's Dictionary defines the word "available" to mean something "that is accessible or may be obtained" or something that is "at disposal esp. for sale or utilization." Webster's Third New International Dictionary 150 (unabridged) (2002). Finally, the words and phrases, "accessible, at one's disposal, convenient, reachable and within reach" are common synonyms for the word "available." *See* Burton's Legal Thesaurus 48 (3d ed.1998). These definitions and the common understanding of the word "available" lead us to conclude that the legislature meant that a machine must be accessible to play or operate a "game" to be a "gaming machine." Since "an activity played in a private residence in which no person makes money for operating the activity except through winnings as a player," is specifically excluded

from being a "game" under the Act, Section 60–2E–3(N), and it is undisputed that this is the only use of the machines, they are not accessible to play or operate a "game." Therefore, they are not a "gaming machine" subject to the Act.

{13} The Board argues that any person can manufacture, distribute, and possess a gaming machine free from the Board's regulatory oversight by simply asserting that the machine is manufactured, distributed, or possessed only for non-commercial use in a private residence if we affirm the district court. We disagree. When the exclusion in Section 60–2E–3(N) is asserted, the activity in the private residence at the time the machine is seized determines whether the machine is subject to forfeiture. *See T & W Enter., Inc. v. Casey,* 715 S.W.2d 356, 358–59 (Tenn.Ct. App.1986) (stating that the legality of a coin operated video device depends on its condition and method of operation at the time it is seized). If the activity in the residence involves playing or operating a "game" (i.e., it is accessible to gamble with) it is subject to forfeiture unless it is properly licensed under the Act. If the owner or claimant can show the contrary, the machine is not an unlicensed gaming machine. Moreover, if such a device is not physically located in a private residence at the time it is seized, it can be presumed that it is a gaming machine because the definition of a game only excludes "an activity played in a private residence in which no person makes money for operating the activity except through winnings as a player." Section 60–2E–3(N).

## B. Forfeiture Under the Criminal Code

{14} The Board argues that the slot machines are a "gambling device" under the Criminal Code, and subject to forfeiture under Section 30–19–10 (providing that any "gambling device" shall be seized by a law enforcement officer, and upon application of the district attorney, the district court may order its destruction). The Criminal Code at NMSA 1978, § 30–19–1(C) (1997) (amended 2002) defines a "gambling device" as:

[A] contrivance other than an antique gambling device that is not licensed for use

pursuant to the [Act] and that, for a **consideration,** affords the player an **opportunity** to obtain anything of value, the award of which is determined by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the device[.]

(Emphasis added.)

{15} Similar to its argument under the Act, the Board argues that the definition does not require a gambling device to be "actually used" for gambling in order to constitute a "gambling device"; it only needs to afford the player an "opportunity" to win a prize. This argument overlooks the requirement of consideration. While "consideration" is not defined in the subsection defining a "gambling device," it is defined in the subsection defining a "lottery." Section 30–19–1(E) states that a "lottery" is:

[A]n enterprise wherein, for a **consideration,** the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by some skill. "Lottery" does not include the New Mexico state lottery established and operated pursuant to the New Mexico Lottery Act [NMSA 1978, §§ 6–24–1 to –34 (1995) ] or gaming that is licensed and operated pursuant to the [Act]. As used in this subsection, **"consideration" means anything of pecuniary value required to be paid to the promoter** in order to participate in a gambling or gaming enterprise.

(Emphasis added.)

■ {16} We see no reason to give "consideration" a different meaning in each subsection. *See State v. Smith,* 2004–NMSC–032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 ("[A] statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole." (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:05, at 165 (6th ed., rev. 2000) (alteration in original) ) ); *Romero v. Valencia County,* 2003–NMCA–019, ¶ 8, 133 N.M. 214, 62 P.3d 305 ("[A] statute is read in its entirety and each part is construed with every other part to achieve a harmonious whole[.]"); *BC & L Pavement Servs., Inc. v. Higgins,* 2002–NMCA–087, ¶ 15, 132 N.M. 490, 51 P.3d 533 ("We will construe the entire statute as a whole so that all the provisions will be considered in relation to one another." (internal quotation marks and citation omitted) ), *overruled on other grounds by Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n,* 2003–NMSC–005, 133 N.M. 97, 61 P.3d 806. The Attorney General has previously arrived at the same conclusion in construing a prior version of the statute. *See* N.M. Att'y Gen. Op. No. 82–16 (1982) (concluding that where "consideration" was defined in a subsection defining a "lottery," but it was not defined in a separate subsection defining a "gambling device," the word would be given the same definition in the subsection defining "gambling device"). The Board does not allege that anything was required to be paid to Owners to play a machine. In fact, there is no allegation that Owners were involved in illegal gambling, and the only persons who played the machines were Owners and their social acquaintances. Finally, there is no allegation or proof that anyone playing a machine made any money except through winnings as a player. Stated another way, no "consideration" was paid to Owners to play a machine so there is no "gambling device" as defined in the Criminal Code. This is consistent with the Act, which excludes from the definition of a "game" an "activity played in a private residence in which no person makes money for operating the activity except through winnings as a player[.]" Section 60–2E–3(N). As we have already discussed, without a "game" there is no "gaming machine" subject to the Act.

**CONCLUSION**

{17} We hold that the machines are not subject to the Act because they are not a "gaming machine" to make them subject to the Act, and they do not constitute a "gambling device" under the Criminal Code. Therefore, they are not subject to forfeiture and we affirm the district court order granting Owners' motion for summary judgment.

{18} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and IRA ROBINSON, Judges.