This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            NO. 28,491

**RYAN JAMES ALAN THOMPSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant entered a conditional plea to one count of manufacturing child pornography, contrary to NMSA 1978, Section 30-6A-3(D) (2001) (amended 2007), a second degree felony, reserving the right to appeal the district court's denial of his motion to dismiss and his motion to suppress. On appeal, Defendant argues (1) his act of saving pornographic images of children to a compact disc (CD) did not constitute manufacturing child pornography; (2) his statement taken prior to warnings being given in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966), should have been suppressed; (3) his trial counsel was ineffective; and (4) the State committed prosecutorial misconduct. Having considered these arguments, we affirm Defendant's conviction.

**BACKGROUND**

**I.      Defendant Was Properly Charged Under Section 30-6A-3(D)**

Defendant filed a motion to dismiss pursuant to Rule 5-601(B) NMRA and *State v. Foulenfont*, 119 N.M. 788, 895 P.2d 1329 (Ct. App. 1995), arguing that Section 30-6A-3(D), which criminalizes the manufacturing of child pornography, did not apply to his act of saving images to a CD. We previously addressed this matter in *State v. Smith*, 2009-NMCA-028, 145 N.M. 757, 204 P.3d 1267. In *Smith*, the defendant was charged with copying pornographic images of children to an external hard drive. This Court held that "the copying of digital images to a portable storage

device creates a new digital copy of the prohibited image sufficient to constitute manufacturing under the definition of manufacturing found in . . . Section 30-6A-2(D)." *Id.* ¶ 2.

To the extent Defendant asks this Court to reconsider its decision in *Smith*, we decline to do so. Defendant raises the same statutory construction arguments raised in *Smith*. Specifically, Defendant argues that this Court should not apply a formalistic and mechanical construction of the statute and should consider the gradation in sentencing imposed by the statute in order to distinguish individuals who merely copy photographs that have already been taken from those who actually photograph children. This Court rejected this argument in *Smith*. *See id.* ¶¶ 10-17. To the extent Defendant asserts that *Smith* presents "an incomplete analysis that violate[s] basic tenets of statutory construction[,]" we disagree. *Smith* relies on the plain language of the statute and the definition of "manufacture" as reflecting legislative intent, consistent with how our courts interpret legislative acts. *See id.* ¶¶ 9-13 (citing *State of N.M. ex rel. Gaming Control Bd. v. Ten (10) Gaming Devices*, 2005-NMCA-117, ¶ 6, 138 N.M. 426, 120 P.3d 848, and *State v. Frazier*, 2007-NMSC-032, ¶ 23, 142 N.M. 120, 164 P.3d 1); *see also Buzbee v. Donnelly*, 96 N.M. 692, 700, 634 P.2d 1244, 1252 (1981) ("When a statute uses terms of art, we interpret these terms in

accordance with case law interpretation or statutory definition of those words, if any.").

Defendant also contends that his case is distinguishable from *Smith*, because in *Smith* the State alleged the defendant copied images to both an external hard drive and a CD and then transferred those copies to another computer. Defendant alleges that because (1) there is no allegation that Defendant saved the images to another computer, and (2) there was no evidence that saving a digital image directly from a website to a CD creates a new image, his conduct does not constitute manufacturing child pornography. To the extent Defendant is arguing that because he did not transfer copies to another computer he cannot be charged for manufacturing, the act of transferring the copies to another computer present in *Smith* was not necessary to our determination that the defendant had committed manufacturing under Section 30-6A-3(D). In *Smith*, we relied on Section 30-6A-3(D) which defines "manufacture" as the "copying by any means" of "any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age[.]" 2009-NMCA-028, ¶ 9. Relying on this definition, we held that "when a defendant copies the pornographic image to an external drive, he not only creates yet another record of the prohibited act, but he also places it into a format that is easily transferrable to many computers." *Id.* ¶ 17. We held that the creation of a

4

transportable, shareable copy of the images constituted more than mere possession, and satisfied the Legislature's definition of manufacturing. *Id.*

To the extent Defendant argues that denial of the motion to dismiss was error because there was not evidence to support that saving a digital image directly to a CD creates a new image, Defendant misapprehends the nature of a *Foulenfont* motion. "In *Foulenfont*, we stated that it was proper for a district court to decide purely legal matters and dismiss a case when appropriate before trial." *State v. LaPietra*, 2010-NMCA-009, ¶ 7, 147 N.M. 569, 226 P.3d 668. "Questions of fact, however, are the unique purview of the jury and, as such, should be decided by the jury alone." *Id.*; *see also Foulenfont*, 119 N.M. at 789-90, 895 P.2d at 1330-31. To the extent Defendant is arguing that evidence needed to be presented as to whether a new image was created, we understand Defendant to argue that whether a new image was created is a factual matter. However, to the extent this is a factual matter, the district court was correct in denying Defendant's motion to dismiss. *See State v. Hughey*, 2007-NMSC-036, ¶ 11, 142 N.M. 83, 163 P.3d 470 (holding that "where a motion involves factual matters that are not capable of resolution without a trial on the merits, the trial court lacks the authority to grant the motion prior to trial").

Defendant could have required the State to make a factual showing by exercising his right to a jury trial. Defendant appears to argue that he should now be

allowed to withdraw his plea. However, Defendant did not move to withdraw his plea with the district court, and may not attack his plea for the first time on appeal. *See State v. Andazola*, 2003-NMCA-146, ¶ 25, 134 N.M. 710, 82 P.3d 77 ("[I]f a defendant fails to file a motion to withdraw a plea in the district court, he or she cannot attack the plea for the first time on direct appeal."). We therefore do not address Defendant's argument that he be permitted to withdraw his plea.

To the extent Defendant contends that our application of *Smith*'s interpretation of Section 30-6A-3(D) would violate the due process clause of the Federal Constitution and the *ex post facto* provision of the New Mexico Constitution, this argument also fails. Defendant asserts that our holding in *Smith* was an unforeseeable application of Section 30-6A-3(D). However, in *Smith*, we relied on the plain language of the statute in disagreeing with the defendant's argument that "ordinary men must 'guess' at th[e] statute's meaning[.]" 2009-NMCA-028, ¶ 18. We held that the meaning of the statute was clear as it "specifically define[d] 'copying by any means' as manufacturing." *Id.* Given our analysis and holding in *Smith*, we simply disagree with Defendant's argument that our interpretation of Section 30-6A-3(D) in *Smith* was unforeseeable.

**II.     The District Court Properly Denied Defendant's Motion to Suppress**

6

Defendant contends that the district court erred in denying his motion to suppress because he was not informed of his rights in accordance with *Miranda* prior to being questioned. "An officer's obligation to administer *Miranda* warnings arises only 'when a person is (1) interrogated while (2) in custody.'" *State v. Vasquez*, 2010-NMCA-041, ¶ 26, 148 N.M. 202, 232 P.3d 438 (citation omitted), *cert. denied*, 2010-NMCERT-004, 148 N.M. 572, 240 P.3d 659. Defendant challenges the district court's determination that the interview of Defendant was non-custodial.

"In reviewing the [district] court's determination regarding [the d]efendant's entitlement to the protections of *Miranda*, 'we bear in mind that there is a distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts[,] which is subject to de novo review.'" *Vasquez*, 2010-NMCA-041, ¶ 26 (third alteration in original) (citation omitted). Thus, "[w]e review the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785.

In order to determine whether an individual is in custody for *Miranda* purposes, "the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint of freedom of movement of the degree associated with a

formal arrest." *State v. Wilson*, 2007-NMCA-111, ¶ 23, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted). Note that "[w]hile freedom to leave is not the ultimate inquiry, this consideration is firmly established in the law" and is a factor relevant to the inquiry of whether a person is in custody for *Miranda* purposes. *Id.* ¶¶ 1, 22-23 (emphasizing that the test for determining that a defendant is in *Miranda* custody is not one employed by using a Fourth Amendment analysis of investigatory detention versus de facto arrest, but instead whether the defendant's freedom of movement is restrained by formal arrest or to a degree associated with a formal arrest).

Whether a person is in custody depends on "how a reasonable [person] in the suspect's position would have understood his situation" and not on the "subjective perception of any of the members to the interview." *State v. Smile*, 2009-NMCA-064, ¶ 26, 146 N.M. 525, 212 P.3d 413 (internal quotation marks and citations omitted), *cert. granted*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360.

> This Court has identified a number of factors to consider in determining whether a reasonable person would believe he or she is free to leave includ[ing] the purpose, place, and length of interrogation[,] . . . the extent to which the defendant is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the degree of pressure applied to the defendant.

*Vasquez*, 2010-NMCA-041, ¶ 27 (alterations in original) (internal quotation marks and citation omitted).

8

In the present case, Detective Frank Dart arrived at Defendant's mother's home where Defendant was residing, along with other officers, to execute a search warrant. Detective Dart testified that he asked Defendant if he would go to the police station to talk with him. Defendant agreed. Defendant drove to the police station in his own vehicle. Detective Dart followed Defendant in his unit. When Defendant arrived at the police station he went to the front lobby, had Detective Dart paged, and waited approximately five minutes, along with his girlfriend, for Detective Dart to come and get him. Defendant was then taken to a second waiting area, where he waited a few minutes while Detective Dart prepared the interview room. Defendant testified that on the way to the conference room Detective Dart informed him that he was free to leave, but that Detective Dart would not suggest that he do so. Defendant testified he was placed in an interview room with a table and two chairs, a two-way mirror, and a security camera. The interview lasted approximately two-and-a-half to three hours. During that time, Defendant testified he wanted to leave but did not do so for fear that he would be arrested. Defendant was not placed under arrest following the interview and left the police station in his own vehicle. Further, Defendant testified that he was never placed in handcuffs, that his girlfriend accompanied him to the police station and was with him in both waiting areas, and that Defendant never asked for a break or asked to leave the interview.

We conclude, viewing these facts in the light most favorable to the prevailing party, that Defendant was not in custody for purposes of the Fifth Amendment. We rely on this Court's opinion in *Bravo* in reaching this conclusion. In *State v. Bravo*, the police arrived at the defendant's house to ask if she and her husband would be willing to give a statement. 2006-NMCA-019, ¶ 12, 139 N.M. 93, 128 P.3d 1070. The defendant and her husband agreed to be interviewed and followed the officers to the police station in their own personal vehicle. *Id.* Once at the police station, the defendant confessed, but was not placed under arrest, and was allowed to go home with her husband at the conclusion of the interview. *Id.* ¶ 13. In holding that the defendant in *Bravo* was not in custody for purposes of *Miranda*, we considered that the defendant was asked to give another statement and was willing to do so; that the defendant voluntarily went to the police station, followed the police in her own personal vehicle, and was accompanied by her husband; that the defendant never informed officers that she was tired; that the defendant was never placed in handcuffs or told she was under arrest; and that, despite her confession, the defendant was allowed to go home at the conclusion of her interview. *Id.* ¶¶ 12-13.

The circumstances in the present case are remarkably similar to those in *Bravo*. We therefore conclude that Defendant was not subjected to "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

*Wilson*, 2007-NMCA-111, ¶ 14 (internal quotation marks and citation omitted); *see also State v. Nieto*, 2000-NMSC-031, ¶ 21, 129 N.M. 688, 12 P.3d 442 (holding that a suspect was not in custody where the suspect was "asked and agreed to accompany [the] police officers to the station, was free to leave or terminate the interview, and was provided transportation to and from the station" because these facts are "consistent with routine, non-custodial police questioning"); *State v. Munoz*,1998-NMSC-048, ¶ 43, 126 N.M. 535, 972 P.2d 847 (holding that a suspect was not in custody where the suspect willingly went with police to be questioned, was not handcuffed or searched, was not interviewed in a locked space, and was taken back home when the interview was completed). Accordingly, we hold that the district court did not err in denying Defendant's motion to suppress.

**III.    Defendant Has Not Demonstrated Ineffective Assistance of Counsel**

Defendant contends that he received ineffective assistance from his trial counsel because (1) counsel threatened to discontinue representing Defendant if he did not accept the plea agreement, thus, Defendant neither understood nor voluntarily entered into the plea agreement; and (2) counsel did not preserve the issue of his ineffective assistance of counsel claim in the conditional plea.

There is a two-fold test for proving ineffective assistance of counsel; the defendant must show (1) that counsel's performance fell below that of a reasonably

competent attorney, and (2) that the defendant was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof is on the defendant to prove both prongs. *Id.* "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

To the extent Defendant claims trial counsel was ineffective for failing to preserve his ineffective assistance of counsel claim, "we generally do not demand preservation of the issue because effective assistance of counsel is a fundamental right." *See Garcia v. State*, 2010-NMSC-023, ¶ 28, 148 N.M. 414, 237 P.3d 716. Moreover, turning to the allegation of ineffective assistance of counsel Defendant claims should have been preserved, Defendant has pointed to nothing in the record that supports his claim that trial counsel threatened to discontinue representing Defendant if Defendant did not accept the plea agreement. As noted above, "[i]f facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" *Roybal*,

2002-NMSC-027, ¶ 19. As a result, we conclude that this matter is more properly raised as a habeas corpus petition. *See State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (expressing a preference for habeas corpus proceedings to address ineffective assistance of counsel claims).

**IV.    Prosecutorial Misconduct Was Not Preserved**

Defendant contends that the attorney prosecuting his case tried to improperly influence the defense's case by intimidating a defense witness. The State responded to Defendant's claim by asserting that (1) Defendant failed to preserve this claim, (2) Defendant has not claimed fundamental error, (3) Defendant waived his right to appeal this issue by not reserving it in his conditional plea, and (4) Defendant's claim of prosecutorial misconduct is based on matters outside the record on appeal. The State is correct in pointing out that Defendant did not raise the issue below or reserve the issue of prosecutorial misconduct in his conditional plea agreement. Because Defendant did not reserve the issue of prosecutorial misconduct in his plea agreement, we conclude that Defendant waived the right to raise this issue on appeal. *See State v. Chavarria*, 2009-NMSC-020, ¶ 9, 146 N.M. 251, 208 P.3d 896 (recognizing that a voluntary guilty plea ordinarily constitutes a waiver of the defendant's right to appeal his conviction on other than jurisdictional grounds).

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

14

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**