This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: May 2, 2022**

**No. S-1-SC-38225**

**QWEST CORPORATION, d/b/a
CENTURYLINK QC,**

 Petitioner-Appellant,

v.

**NEW MEXICO PUBLIC REGULATION
COMMISSION,**

 Appellee,

and

**BERNALILLO COUNTY,
CITY OF ALBUQUERQUE, and
COMMUNICATION WORKERS OF AMERICA DISTRICT 7,**

 Intervenors-Appellees.

**In the Matter of the Petition of
CenturyLink QC Regarding Effective
Competition for Retail Residential Services,
Case No. 18-00295-UT**

**APPEAL FROM THE NEW MEXICO
PUBLIC REGULATION COMMISSION**

Montgomery & Andrews, P.A.
Thomas W. Olson
Kari E. Olson
Santa Fe, NM

for Appellant

Russell R. Fisk, Associate General Counsel
Santa Fe, NM

for Appellee

JAlbright Law, LLC
Jeffrey H. Albright
Albuquerque, NM

for Intervenor, Bernalillo County

City of Albuquerque Legal Department
Jane Yee
Albuquerque, NM

for Intervenor, City of Albuquerque

Jason Marks Law, LLC
Jason A. Marks
Albuquerque, NM

for Intervenor, Communication Workers of America

## DECISION

**HANISEE, Chief Judge.**

**{1}**     This appeal requires that we construe the meaning of a recently enacted subsection of the New Mexico Telecommunications Act (the Act), NMSA 1978, §§ 63-9A-1 to -21 (1985, as amended through 2017). Qwest Corporation d/b/a CenturyLink QC (CenturyLink) appeals from an order by the New Mexico Public Regulation Commission (the Commission) denying its petition to declare effective competition for CenturyLink's retail residential basic local exchange service under Section 63-9A-8(C). *In the Matter of the Petition of CenturyLink QC Regarding Effective Competition for Retail Residential Services*, Case No. 18-00295-UT (Nov. 21, 2019). We hold that the Commission did not abuse its discretion in construing the meaning of the provision in question, and we affirm. We address the issue herein to provide guidance by nonprecedential decision. *See* Rule 12-405(B)(2), (5) NMRA (allowing for disposition by nonprecedential decision).

## I.     BACKGROUND

**{2}**     Under the Act, CenturyLink is an "incumbent local exchange carrier" (ILEC) offering "public telecommunications services" in New Mexico. Section 63-9A-3(H), (O). "Public telecommunications services" are defined as "the transmission of . . . information of any nature by wire . . . or other electromagnetic means." Section 63-9A-3(O). "[M]obile telephone service" is explicitly excluded from this definition. *Id.* The legislative purpose of the Act is set forth in Section 63-9A-2, which explains that the Legislature intends to "maintain the availability of access to telecommunications services at

affordable rates" and "encourage competition" through "an orderly transition from a regulated telecommunications industry to a competitive market environment."

{3}     To facilitate this purpose, the Commission is given authority to regulate ILECs. Section 63-9A-5. The Commission is additionally instructed, "by its own motion or upon petition by any interested party, to hold hearings to determine if any public telecommunications service is subject to effective competition in the relevant market area." Section 63-9A-8(A). If the Commission makes "a determination that a service or part of a service is subject to effective competition, the [C]ommission shall . . . modify, reduce or eliminate rules, regulations and other requirements applicable to the provision of such service, including the fixing and determining of specific rates, tariffs or fares for the service." *Id.* "Effective competition" is defined as "the competition that results from the customers of the service having reasonably available and comparable alternatives to the service, consistent with the standards set forth in Section 63-9A-8." Section 63-9A-3(F). Stated simply, under the Act, the provision of certain services is subject to diminished regulation in a competitive market.

{4}     To determine "whether a service is subject to effective competition," the Commission considers seven factors:

> (1) the extent to which services are reasonably available from alternate providers; (2) the ability of alternate providers to make functionally equivalent or substitute services readily available at competitive rates, terms and conditions; (3) existing economic, technological, regulatory or other barriers to market entry and exit; (4) the number of other providers offering the same or reasonably comparable services; (5) the presence of at least two facilities-based competitors . . . ; (6) the ability of the petitioning provider to affect prices or deter competition; and (7) such other factors as the commission deems appropriate.

Section 63-9A-8(B). Factors (4) through (7) of this section were added in a 2017 amendment to the Act. Compare 2017 N.M. Laws, ch. 71, § 3, with 1987 N.M. Laws, ch. 21, § 6. This amendment also added Section 63-9A-8(C), which CenturyLink invoked in the proceedings before the Commission. Section 63-9A-8(C) creates a presumption of effective competition, providing that

> [i]f, in the wire center serving area for which a determination of effective competition is requested, the [ILEC] provides basic local exchange service either separately or bundled to less than one-half of the customer locations where such service is available at the time the petition is filed, the public interest requires that effective competition be presumed for all regulated telecommunications services provided by the incumbent provider in that wire center serving area; provided, however, that findings and presumptions applied pursuant to this section shall be made separately for residential and business services and customer locations.

Section 63-9A-8(C) lays out a formula for calculating "effective competition" for the area. It requires the Commission to divide the "locations" where Century Link provides landline telephone services (the numerator) by the "locations where such service is available" (the denominator).

{5}   In September 2018 CenturyLink filed a "Petition Requesting a Determination of Effective Competition for Retail Residential Telecommunications Services Pursuant to NMSA 1978, § 63-9A-8(C)" (Petition). The Petition was limited to CenturyLink's retail residential telephone service.[1] The Commission held a public hearing on September 25 and 26, 2019, to determine whether CenturyLink had demonstrated effective competition under Section 63-9A-8(C). Bernalillo County, the City of Albuquerque (the City), and the Communication Workers of America District 7 (the CWA) intervened in the proceedings, opposing CenturyLink's petition for various reasons. CenturyLink submitted testimony of David Ziegler, CenturyLink's Regional Director for State and Local Government Affairs, who presented "eight different scenarios" determining the applicability of Section 63-9A-8(C) and discussing how its presumption is triggered by a service provider's provision of services to less than one half of customer locations where a given service is provided. Ziegler presented four "estimates" for the numerator and two for the denominator of his determinations. The parties ultimately agreed that "the numerator of the equation" should be limited to "the number of CenturyLink access lines providing residential basic local exchange service in each wire center;" however, they disagreed about the scope of the denominator ("customer locations where such service is available").

{6}   Ziegler presented two calculations for the denominator, which both relied on 2010 United States Census housing unit data. The first relied solely on the 2010 census data, while the second calculation updated the 2010 census data with estimates from Experian and Alteryx Designer to predict housing units in 2018. In response to Ziegler's testimony, the Commission heard expert testimony from Michael Ripperger on behalf of the Commission's utility staff, Susan Baldwin on behalf of the CWA, and Larry Blank on behalf of the City, who contended that the calculations offered by CenturyLink had "multiple sources of uncertainty inherent." The experts were also concerned that CenturyLink included locations that did not have physical connectivity to CenturyLink's landline telephone service.

{7}   Following additional posthearing briefing by the parties, the hearing examiner issued an opinion recommending that CenturyLink's petition be denied, as she determined that it failed to introduce evidence establishing a presumption of effective

---

[1]In 2013 the Commission determined that CenturyLink's prepackaged and bundled residential landline telephone service was subject to effective competition under the prior version of Section 63-9A-8(B). *In the Matter of the Petition of Qwest Corp. d/b/a CenturyLink QC for a Determination That Telecommunications Services Are Subject to Effective Competition in N.M.*, No. 11-00340-UT, 1,135 (Feb. 25, 2013). However, these 2013 proceedings were closed "without determining how to reduce or eliminate rules, regulations and other requirements applicable to CenturyLink's packaged and bundled residential services," in part because CenturyLink's carrier status was recategorized to ILEC by the 2017 amendment. *In re CenturyLink*, No. 18-00295-UT, 23 n.1 (Nov. 21, 2019).

competition under Section 63-9A-8(C). In February 2020 the Commission adopted the hearing examiner's decision. This appeal followed.

## II.    DISCUSSION

**{8}**    The key dispute on appeal centers on the construction of Section 63-9A-8(C), under which we consider whether CenturyLink "provides *basic local exchange service* either separately or bundled to less than one-half of the customer locations where *such service* is available." (Emphasis added.) On appeal, CenturyLink asserts that (1) the Commission failed to consider the Legislature's deregulatory intent, (2) the Commission's construction of "such service" should have included services of like kind or character, and (3) the Commission's construction of "available" conflicts with CenturyLink's regulatory obligation to provide services throughout its territory and should have included all customer locations within the territory.

## A.    Standard of Review

**{9}**    We review the Commission's order to determine whether it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." Section 63-9A-16. "In reviewing the Commission's decision, we begin by looking at two interconnected factors: whether the decision presents a question of law, a question of fact, or some combination of the two and whether the matter is within the agency's specialized field of expertise." *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 2007-NMSC-053, ¶ 13, 142 N.M. 533, 168 P.3d 105 (internal quotation marks and citation omitted). "For questions of fact, this Court looks to the whole record to determine whether substantial evidence supports the Commission's decision." *Pub. Serv. Co. of N.M. v. N.M. Pub. Regul. Comm'n*, 2019-NMSC-012, ¶ 14, 444 P.3d 460 (internal quotation marks and citation omitted). "Substantial evidence requires that there is evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *Id.* (internal quotation marks and citation omitted). Nevertheless, we "accord[] considerable deference" to decisions "requiring expertise in highly technical areas." *Id.* (internal quotation marks and citation omitted).

**{10}**    CenturyLink asserts that the "key dispute in this proceeding is legal, not factual." This Court generally reviews questions of law de novo. *N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 19. However, "[w]hen an agency that is governed by a particular statute construes or applies that statute, th[is] [C]ourt will begin by according some deference to the agency's interpretation." *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 11, 120 N.M. 579, 904 P.2d 28. Although not bound by the agency's interpretation, this Court "will confer a heightened degree of deference to legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Id.* (internal quotation marks and citation omitted). However, "statutory construction itself is not a matter within the purview of the Commission's expertise," so this Court will "afford little, if any, deference to the Commission" on questions of law not involving Commission

expertise or policy determination. *N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 19 (internal quotation marks and citation omitted).

**{11}** The parties dispute the amount of deference this Court should accord to the Commission's decision. Bernalillo County, the City, and the CWA contend that we should confer a heightened degree of deference because the Commission exercised expertise in construing Section 63-9A-8(C). CenturyLink answers that the "disputes relate to ordinary language," and "[e]ven the meaning of the term 'local exchange service' is not particularly technical or in dispute."

**{12}** We determine that the questions raised in interpreting this section require administrative fact finding and technical expertise. For instance, in evaluating whether the Section 63-9A-8(C) presumption is applicable, the Commission evaluated "'whether the incumbent . . . no longer serv[ed] 50% or more of the residential locations it was serving.'" In conducting such an evaluation, the Commission interpreted technical language and relied upon quantitative data provided by CenturyLink. Thus, although this Court "is not bound by the agency's interpretation and may substitute its own independent judgment" in interpreting a governing statute, we will reverse only "if the agency's interpretation of [the statute] is unreasonable or unlawful." *Morningstar*, 1995-NMSC-062, ¶ 11.

**B.     The Commission's Interpretation of Section 63-9A-8(C) Is Supported by the Purpose and Plain Language of the Act**

**1.     Legislative intent**

**{13}** Before addressing CenturyLink's arguments regarding construction of the relevant provisions of the Act, we first examine the Legislature's intent. CenturyLink asserts that "in construing 'residential locations where such service is available' the Commission failed to give effect to the deregulatory intent of the Legislature in enacting Section 63-9A-8(C)." CenturyLink contends that statutory interpretation "appropriately begins" by analyzing the Act's definition of "effective competition." Section 63-9A-3(F) defines "effective competition" as "competition that results from the customers of the service having reasonably available and comparable alternatives to the service, consistent with the standards set forth in Section 63-9A-8." CenturyLink argues that this definition, which contemplates "comparable alternatives," coupled with Section 63-9A-2's general deregulatory purpose of the Act, suggests that the Legislature would have intended consideration of comparable wireless and voice-over-internet protocol (VoIP) services in an effective competition analysis under Section 63-9A-8(C).

**{14}** Section 63-9A-2 describes the Legislature's intent in adopting the Act, stating, "To the extent that is consistent with maintaining availability of access to service at affordable rates and comparable telecommunications services rates, it is further the policy of this state to encourage competition . . . ." The parties opposing CenturyLink's construction emphasize that the Legislature intended an "an orderly transition" to deregulation only "[t]o the extent that it is consistent with maintaining availability of access to service at affordable rates," § 63-9A-2, and that this purpose contradicts

CenturyLink's proposed interpretation. Bernalillo County and the City argue that the purpose of the Section 63-9A-8(C) test is "to show the progress in an ILEC giving up market power" that the ILEC made through monopoly access and investment in landline telephone infrastructure. The Commission further argues that consideration of comparable services falls within the more comprehensive analysis set forth in Section 63-9A-8(B), and thus that comparable services should not be included in the Section 63-9A-8(C) equation.

**{15}** We view the Commission's definition to effectively harmonize Section 63-9A-8(C)—which, separate from Section 63-9A-8(B), exists to establish a presumption of effective competition in a specific circumstance—with the purpose and scheme of the Act.[2] For example, Section 63-9A-8(B) directs the Commission to consider such factors as "(2) the ability of alternative providers to make functionally equivalent or substitute services readily available at competitive rates, terms, and conditions" and/or "(5) the presence of at least two facilities-based competitors, including without limitation facilities-based providers of wireless or [VoIP] services . . . that are unaffiliated with the petitioning carrier and provide the same or reasonably comparable service." We are concerned at the outset that CenturyLink's proposed interpretation of Section 63-9A-8(C) would reduce this qualitative list into consideration of just a single factor—the availability of functionally equivalent voice services. Additionally, although the purpose of the Act under Section 63-9A-2—to maintain the "availability of access to service at affordable rates" while encouraging competition—appears to be consistent with the Commission's decision, the Act does not provide clarification as to Section 63-9A-8(C)'s appropriate construction, which CenturyLink challenges. Thus, we analyze the plain meaning of Section 63-9A-8(C) and apply principles of statutory construction. *See State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶¶ 2, 23, 117 N.M. 346, 871 P.2d 1352.

### 2. "Basic local exchange service"

**{16}** Addressing the description in Section 63-9A-8(C) of what an ILEC provides, CenturyLink contends that the Commission "narrowly and unreasonably defined 'basic local exchange service' to include only [CenturyLink's] basic local exchange." The hearing examiner indeed construed "basic local exchange service" to refer specifically to CenturyLink's landline telephone service. CenturyLink disputes this definition, arguing that because "[t]he Act does not define 'basic local exchange service,' but does define 'local exchange service' broadly," the Commission's definition does not give effect to the purpose of the Act. *See* § 63-9A-3(K) (defining "local exchange service"). Pointing to this definition, CenturyLink argues that the Commission failed to "evaluate the [Act]'s broad, technology-neutral definition of 'local exchange service.'"

**{17}** The Act defines "local exchange service" as "the transmission of two-way interactive switched voice communications furnished by a telecommunications company

---

2Under Section 63-9A-8(C), the provision CenturyLink asserts to be applicable, our task on appeal is to assess whether the Commission's order is "arbitrary, capricious or an abuse of discretion." Section 63-9A-16. Our decision does not address whether CenturyLink could prove effective competition under Section 63-9A-8(B) as such inquiry is not before us. Consequently, our decision does not preclude CenturyLink from pursuing a determination of effective competition under Section 63-9A-8(B).

within a local exchange area." Section 63-9A-3(K). The Commission's quality of service rules define "basic local exchange service" as

> the customer's voice grade access to the public switched network, dual tone multifrequency (DTMF) signaling or its functional equivalent, and access to emergency services (911 and E-911), operator services, toll services, directory assistance, and toll blocking services for qualifying local income customers.

17.11.22.7(C) NMAC.

**{18}** This definition requires more than a lay-level understanding. Thus, the question whether wireless or VoIP services are functionally equivalent to landline telephone services and therefore included in "basic local exchange service" relies in part on technical knowledge within the Commission's expertise. *See Morningstar*, 1995-NMSC-062, ¶ 11. The Commission's decision to define "basic local exchange service" as landline telephone service appears to be reasonable. Landline telephone service relies on different technologies, has different regulatory requirements, and offers different price structures than other services, such as wireless and VoIP. Moreover, in construing "basic local exchange service" the hearing examiner relied on testimony and exhibits presented, Federal Communications Commission (FCC) statements and decisions, lay and communications industry dictionaries, and CenturyLink's tariffs and regulations. Thus, we are unpersuaded that the Commission's construction of "basic local exchange service" was unreasonable or unsupported by substantial evidence.

### 3. "Such service"

**{19}** The parties additionally debate the meaning of "such service" as used in Section 63-9A-8(C) and whether "such" refers only generally to telephone service, including both landline and wireless, within the purview of "such service." The hearing examiner construed the phrase to refer to the antecedent term "basic local exchange service" requiring "symmetry" in the calculation of the numerator and denominator. In doing so, the hearing examiner relied, in part, upon this Court's construction of the word "such" in *State v. Nick R.*, 2009-NMSC-050, 147 N.M. 182, 218 P.3d 868. CenturyLink asserts that *Nick R.* supports consideration of comparable services because there this Court explained that "such" refers to "things of the kind of those mentioned." The Commission answers that the hearing examiner relied on a law dictionary to establish that "such" means "of this or that kind" and relates "such service" specifically to CenturyLink's landline telephone service. We agree and explain.

**{20}** In *Nick R.*, a student was charged with possessing a deadly weapon on school premises. *Id.* ¶ 1. This Court, *see id.* ¶¶ 2-3, considered whether a small pocketknife constituted a "deadly weapon" under the Criminal Code, which defines the term as "any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, . . . and *all such weapons* with which dangerous cuts can be given." NMSA 1978, § 30-1-12(B) (1963) (emphasis added). This Court held that the Legislature did not intend to include the

student's ordinary pocketknife as a *per se* deadly weapon. *Nick R.*, 2009-NMSC-050, ¶ 48. We explained that under the principle of statutory construction *ejusdem generis*, "general words are not construed to their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *Id.* ¶ 21 (internal quotation marks and citation omitted).

**{21}** Although the holding from *Nick R.* supports CenturyLink's contention that "such" refers to the same kind of things as those mentioned, the statutory language at issue here is distinguishable. The canon of *ejusdem generis* is used to clarify statutory language that involves "a general word or phrase following *two or more* specific words or phrases." NMSA 1978 § 12-2A-20(A)(2) (1997) (codifying the principle of *ejusdem generis*) (emphasis added). The *Nick R.* Court appropriately applied this principle because the definition of "'deadly weapon'" listed multiple examples of cutting or thrusting weapons before using the phrase "'all such weapons'" to indicate the inclusion of weapons of like kind. *See* 2009-NMSC-050, ¶ 2 (quoting Section 30-1-12(B)). However, Section 63-9A-8(C) references no comparable prior list and instead identifies one service ("basic local exchange service") as a singular noun. The Legislature's decision to rely on a singular term with a present-tense-singular verb form ("the [ILEC] provides basic local exchange *service* . . . where *such service is* available . . .") indicates that only one type of "such service" (i.e., basic local exchange service) was intended, and therefore the principal of *ejusdem generis* does not apply. Moreover, "such service" in Section 63-9A-8(C) does not mean "of that kind." Instead, "such service" is used as a demonstrative pronoun (for example, "this" or "that") replacing the antecedent term "basic local exchange service." *See Merriam-Webster Collegiate Dictionary* 332 (11th ed. 2020) (defining the adjective *demonstrative* as "pointing out the one referred to and distinguishing it from others of the same class" (distinguishing a house as *that house*) and defining the noun as "a demonstrative word or morpheme").

**{22}** Indeed, CenturyLink even acknowledges the potential demonstrative usage of "such," asserting that if "such service" is being used in this way in Section 63-9A-8(C), then the words should be read as referring to the preceding words, "basic local exchange service." Asserting that the word *residential* is implied, CenturyLink thus suggests that "such" is a demonstrative adjective signifying "residential," as in "residential service." The doctrine of the last antecedent addresses this argument. Under this doctrine, "[r]elative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding and are not to be construed as extending to or including others more remote." *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 9, 110 N.M. 314, 795 P.2d 1006 (internal quotation marks and citation omitted). "Furthermore, a comma separating the qualifying phrase from the antecedents is strong evidence the qualifying phrase applies to all antecedents, not solely the last antecedent." *Kevin J. v. Sager*, 2000-NMCA-012, ¶ 11, 128 N.M. 794, 999 P.2d 1026.

**{23}** Applying the doctrine of the last antecedent, the words "such service" in Section 63-9A-8(C) points to the last antecedent: "basic local exchange service." The phrase beginning with "provided, however, that findings," (which appears subsequently to "such service" and is set off by a semi-colon) applies to both "basic local exchange service" and "such service." Thus, in applying the doctrine to replace the word "such," Section

63-9A-8(C) may be read as: "provides [residential] basic local exchange service . . . to less than one-half of the customer locations where [residential basic local exchange] service is available at the time the petition is filed."

**{24}** Therefore, we reject CenturyLink's argument that the general definition of "effective competition" in Section 63-9A-3(F) widens the meaning of "such service" in Section 63-9A-8(C) to include comparable services. There is no indication that the Legislature intended to imbue the word "such" here with specialized meaning to inherently contemplate comparable alternative services. *See* NMSA 1978 § 12-2A-2 (1997) ("Unless a word or phrase is defined in the statute or rule being construed, its meaning is determined by its context, the rules of grammar and common usage."). The Act specifically states that the words "effective competition" are meant to be defined "consistent[ly] with the standards set forth in Section 63-9A-8." Section 63-9A-3(F). The context of the words "such service" in Section 63-9A-8(C) likewise suggests that the Legislature intended to refer to the specific antecedent "basic local exchange service" and not the general definition of "effective competition." Accordingly, the Commission's construction of "such service" as referring to "basic local exchange service" is reasonable.

### 4. "Available"

**{25}** Finally, CenturyLink challenges the Commission's construction of "available" in Section 63-9A-8(C) as having required the physical deployment of CenturyLink facilities at the retail residential "customer locations where such service is available at the time the petition is filed." CenturyLink asserts that the Commission should have included all potential customer locations within the Section 63-9A-8(C) denominator—regardless of whether facilities for landline telephone service were ever installed—because CenturyLink has a regulatory obligation to provide these services to all customers in its territory. The other parties, countering that CenturyLink has "discretion" not to provide the service "'if the costs of the facility extension [do not] represent a prudent investment,'" thus argue to disqualify the counting of unconnected locations in the denominator.

**{26}** Relying on dictionaries, expert testimony, a Court of Appeals' opinion (*State ex rel. N.M. Gaming Control Bd. v. Ten (10) Gaming Devices*, 2005-NMCA 117, 138 N.M. 426, 120 P.3d 848), and the meaning the FCC accorded to "availability" in its 2012 Lifeline Order,[3] the hearing examiner explained that "'where such service is available'" meant that the denominator was limited to those locations where CenturyLink had existing physical facilities for its residential landline telephone service. She reasoned

---

3In its 2012 Lifeline Order, the FCC established goals for the Universal Service Fund's Lifeline program, including "ensuring the availability of voice [and broadband] service for low-income Americans." 27 FCC Rcd. 6656, 6671, 6673, ¶¶ 27, 33 (2012). The FCC explained that for "broadband to be 'available' to a low-income consumer, a broadband network (or networks) *must have been deployed to the consumer*, and the broadband service offered over the network must be affordable and provide a sufficient level of robustness (e.g., bandwidth) to meet basic broadband needs." *Id.* at 6674, ¶ 34 (emphasis added).

that inclusion of all customer locations in the denominator would render Section 63-9A-8(C)'s language requiring "'where such service is available' meaningless."

**{27}** In *Ten Gaming Devices*, the Court of Appeals considered whether slot machines that were held and used in a private residence could be considered "gaming machines" subject to forfeiture under the Gaming Control Act. 2005-NMCA-117, ¶¶ 1, 12. Reasoning that the relevant statutes required the machines to be "available" for a for-profit "game" to be considered a "gaming machine," the Court of Appeals explained:

> The complete definition of "available" contained in *Black's Law Dictionary* 132 (5th ed. 1979) reads, "[s]uitable; useable; accessible; obtainable; present or ready for immediate use. Having sufficient force or efficacy; effectual; valid." Similarly, Webster's Dictionary defines the word "available" to mean something "that is accessible or may be obtained" or something that is "at disposal esp. for sale or utilization." *Webster's Third New International Dictionary* 150 (unabridged) (2002). . . . These definitions and the common understanding of the word "available" lead us to conclude that the legislature meant that a machine must be accessible to play or operate a "game" to be a "gaming machine."

2005-NMCA-117, ¶ 12. The Court of Appeals held that a privately owned and operated machine was not accessible as a "game" and not subject to forfeiture. *Id.*

**{28}** We are also guided by our decision in *Mountain States Tel. & Tel. v. N.M. State Corp. Comm'n*, 1990-NMSC-017, ¶¶ 1, 13-15, 109 N.M. 504, 787 P.2d 423, in which we interpreted a pre-2017 version of the Act. In *Mountain States*, petitioner US West Communications (US West) argued that the relevant market for evaluating effective competition "should not be defined in terms of physically existing alternate services but rather the potential for entry into the market by an alternative supplier." *Id.* ¶¶ 1, 13. We determined the argument to be without merit based on the ordinary meaning of the statutory language, "extent to which services are reasonably available." *Id.* ¶ 13; *see* § 63-9A-8(B)(1) (1987). We further pointed to undisputed evidence showing that US West had "an 86% share of the market . . . [and] was the dominant supplier of public telephone services in the state." *Id.* ¶ 14. Accordingly, we "affirm[ed] the [C]ommission's determination that the absence of physical evidence or manifestation of competition activity . . . demonstrated a lack of effective competition." *Id.*

**{29}** Section 63-9A-8(A)-(C) requires the Commission to determine "the customer locations where such service *is* available." (Emphasis added.) Section 63-9A-8(C) discusses availability in the present tense and "does not refer to future availability of services or how they *might* be available, but rather focuses on the present set of circumstances." *Mountain States*, 1990-NMSC-017, ¶ 13. And the "ordinary meaning" of the phrase "'services *are* reasonably available,'" which was at issue in *Mountain States*, *id.*, is not easily distinguished from the ordinary meaning of the phrase "service is available" at issue here. Moreover, as the hearing examiner noted, extending the relevant locations to include all potential customer locations in CenturyLink's territory, regardless of the current existence of facilities to connect those locations to its landline

telephone service, would render the phrase "customer locations *where such service is available*" superfluous. Section 63-9A-8(C) (emphasis added); *see Baker v. Hedstrom*, 2013-NMSC-043, ¶ 24, 309 P.3d 1047 (We "must interpret a statute so as to avoid rendering the Legislature's language superfluous.") Furthermore, as the hearing examiner's reliance on expert testimony and the FCC's 2012 LifeLine Order show, there are both factual and policy considerations that influence whether a telecommunications service should be considered properly "available" at any given location.

## III.    CONCLUSION

{30}    Because we determine that the hearing examiner's construction of "basic local exchange service," "such service," and "available" is supported by the purpose and the plain language of the Telecommunications Act, the Commission's denial of CenturyLink's petition and the Commission's determination that CenturyLink failed to provide evidence establishing a presumption of effective competition under Section 63-9A-8(C) are reasonable, lawful, and supported by substantial evidence. Therefore, we affirm.

{31}    IT IS SO ORDERED.

J. MILES HANISEE, Chief Judge
Sitting by designation

WE CONCUR:

MICHAEL E. VIGIL, Chief Justice

C. SHANNON BACON, Justice

DAVID K. THOMSON, Justice

JULIE J. VARGAS, Justice